**Penny G. RICCHIO, Appellant,**

v.

**Ray KLINE, Acting Administrator of the General Services Administration, Appellant,**

v.

**Richard M. NIXON, Appellee.**

**Nos. 84–5508, 84–5509.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 18, 1985.

Decided Oct. 8, 1985.

---

Eric R. Glitzenstein, Washington, D.C., with whom Alan B. Morrison, John Cary Sims, and Katherine A. Meyer, Washington, D.C., were on brief, for appellant Ricchio.

Douglas Letter, Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph E. DiGenova, U.S. Atty., and Leonard Schaitman, Dept. of Justice, Washington, D.C., were on brief, for appellant Kline.

Seth P. Waxman, Washington, D.C., with whom Herbert J. Miller, Jr., R. Stan Mortenson, and Stephen L. Braga, Washington, D.C., were on brief, for appellee Richard M. Nixon.

Before WALD, STARR, and FRIEDMAN,* Circuit Judges.

FRIEDMAN, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the District of Columbia granting summary judgment against the plaintiff in a suit under the Freedom of Information Act (Information Act), 5 U.S.C. § 552 (1982). Plaintiff sought disclosure of transcripts of tape recordings of White House conversations involving former President Nixon. The transcripts were made from the tapes by the Watergate Special Prosecution Force (Watergate Force). The district court dismissed the suit on the ground that the transcripts were not "agency records" under the Information Act and, therefore, were not subject to disclosure under that Act. We affirm, but on a different ground.

I

A. The transcripts involved were prepared by the Watergate Force from copies of White House tape recordings. The Watergate Force obtained most of the tapes from President Nixon through a subpoena issued in one of the Watergate criminal cases. *United States v. Mitchell*, 377

---

* Daniel M. Friedman, of the Court of Appeals for the Federal Circuit, sitting by designation pursuant to 28 U.S.C. § 291(a).

F.Supp. 1326 (1974). This subpoena was upheld in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

After President Nixon turned over the original tapes to the district court, that court reviewed them *in camera* in accordance with the Supreme Court's directions, and deleted portions that it determined would be irrelevant or inadmissible in a criminal case. *See Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 593 n. 3, 98 S.Ct. 1306, 1309 n. 3, 55 L.Ed.2d 570 (1978). The court then gave copies of the remaining portions of the tapes to the Watergate Force for use in the Watergate trials and investigations. The transcripts, which the Watergate Force prepared from the copied tapes, were marked for identification as possible government exhibits, but none of the transcripts at issue here was introduced into evidence, and the corresponding portions of the tapes were not played at trial.

When the Watergate Force was disbanded in June 1977, the Special Prosecutor transferred the office's records to the National Archives and Record Service (Archives), a branch of the General Services Administration (GSA), for permanent retention, subject to specific restrictions upon disclosure of the material.

B. In 1978 and 1980, the appellant Ricchio, a doctoral candidate, submitted to the GSA two requests under the Freedom of Information Act for disclosure of 44 of the transcripts that the Watergate Force had made of the Nixon tapes. GSA initially denied the requests, and Ricchio filed a suit under the Information Act against the Administrator of the GSA. The suit, filed in the United States District Court for the District of Columbia, was dismissed twice because of further proceedings before the GSA. Ricchio reinstituted the suit in September 1983 after the GSA had agreed to disclose most but not all of the transcripts. The suit sought disclosure of the withheld portions of the transcripts.

With the consent of the parties, former President Nixon intervened in the suit to oppose release of any of the transcripts. Both sides moved for summary judgment.

President Nixon contended (1) that the transcripts are not agency records, and that the Information Act therefore does not apply to them; (2) that the Presidential Recordings and Materials Preservation Act (Materials Act), 44 U.S.C.A. § 2111 note (Supp.1985) (renumbering and amending 44 U.S.C. § 2107 (1982)), discussed below, exclusively governs access to the transcripts; (3) that even if the Information Act applies, various exemptions in the Act cover the transcripts; and (4) that Presidential privilege and constitutional privacy rights bar disclosure of the transcripts.

The district court granted President Nixon's motion for summary judgment. It held that the transcripts were not subject to disclosure under the Information Act because they are not "agency records." In view of that ruling, the court found it unnecessary to reach the other grounds upon which President Nixon opposed disclosure.

## II

■ The arguments of the parties have been largely directed to the correctness of the district court's ruling that the transcripts are not "agency records" under the Information Act. We pretermit that question, however, and affirm the district court on the alternative ground (which the parties also argued) that the Materials Act is the sole basis upon which the transcripts may be disclosed. Appellant Ricchio did not invoke the procedures of the Materials Act that govern disclosure. We intimate no view on whether she would be entitled to obtain disclosure under that Act. We hold only that because the Materials Act governs the disclosure of the transcripts, she cannot obtain disclosure under the Information Act.

Prior to addressing that issue, however, we discuss the appellant Ricchio's argument (which the GSA does not make) that former President Nixon lacked standing to challenge in the district court the decision of the GSA to disclose the transcripts.

## III

Appellant Ricchio argues that through his intervention President Nixon is attempt-

ing to enjoin the GSA from disclosing material pursuant to the Information Act and that under *Chrysler Corp. v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979), he cannot bar such disclosure.

In *Chrysler,* the company filed a suit to enjoin an agency from disclosing information relating to it that it alleged was covered by one of the exemptions in the Information Act. The Supreme Court held that the Information Act "is purely a disclosure statute and affords Chrysler no private right of action to enjoin agency disclosure." *Id.* at 285, 99 S.Ct. at 1709.

Chrysler also argued that the agency's disclosure of the material would violate a federal statute, the Trade Secrets Act, 18 U.S.C. § 1905 (1982), that made governmental disclosure of certain information a crime. The Court held that although the Trade Secrets Act did not authorize Chrysler to maintain an action to enjoin disclosure in violation of that statute, under section 10 of the Administrative Procedure Act, 5 U.S.C. § 702 (1982), Chrysler could challenge the agency's decision to disclose the information. 441 U.S. at 317, 99 S.Ct. at 1725. The Court ruled that under the Administrative Procedure Act the agency's "decision to disclose the Chrysler reports is reviewable agency action and Chrysler is a person 'adversely affected or aggrieved' within the meaning of § 10(a)" who can seek judicial review of that decision. *Id.* at 318, 99 S.Ct. at 1726.

■ We conclude that President Nixon similarly has standing to assert in this case, as he has, that disclosure of the transcripts may be made only pursuant to the procedures under the Materials Act, which concededly have not been followed in this case. It is immaterial that President Nixon made the assertion as an intervenor in opposition to the plaintiff rather than, as Chrysler did, as the plaintiff itself.

Congress enacted the Materials Act to "preserve the materials relating to the Presidency of Richard M. Nixon and to provide appropriate access to them." H.R. Rep. No. 1507, 93d Cong., 2d Sess. 1 (1974). Section 104(a)(5) of that Act provides for

the issuance of regulations pertaining to public access, which shall take into account "the need to protect any party's opportunity to assert any legally or constitutionally based right or privilege which would prevent or otherwise limit access to such recordings and materials."

The House Committee added the word "privilege" as an interest to be protected in formulating the regulations governing public access "to recognize the legitimacy of the doctrine of executive privilege as stated in ... *United States v. Nixon,* [418 U.S. 683 [94 S.Ct. 3090, 41 L.Ed.2d 1039] (1974) ]." H.R.Rep. No. 1507, *supra,* at 5. In upholding the provisions of the Materials Act for screening by archivists of a vast amount of material against a challenge by President Nixon, the Supreme Court stated that "in designing the regulations, the Administrator must consider the need to protect the constitutional rights of [President Nixon] and other individuals against infringement by the processing itself or, ultimately, by public access to the materials retained." *Nixon v. Administrator of General Services,* 433 U.S. 425, 436, 97 S.Ct. 2777, 2786, 53 L.Ed.2d 867 (1977); *see also Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 604, 98 S.Ct. 1306, 1315, 55 L.Ed.2d 570 (1978).

We conclude that President Nixon is a person "adversely affected or aggrieved" by the Archives' proposed disclosure of the transcripts and properly intervened in this suit to protect his interests in the confidentiality of the transcripts that the Materials Act recognized.

### IV

A. The House Committee Report on the Materials Act stated that the purpose of Title I of the Act (the only portion here involved) was "to preserve the materials relating to the Presidency of Richard M. Nixon and to provide appropriate access to them." H.R.Rep. No. 1507, 93d Cong., 2d Sess. 7 (1974). To accomplish that objective, Congress adopted a comprehensive regulatory scheme. In *Nixon v. Adminis-*

*trator of General Services,* 433 U.S. 425, 429, 97 S.Ct. 2777, 2783, 53 L.Ed.2d 867 (1977), the Supreme Court stated that Title I of the Materials Act

> directs the Administrator of General Services, an official of the Executive Branch, to take custody of the Presidential papers and tape recordings of appellant, former President Richard M. Nixon, and promulgate regulations that (1) provide for the orderly processing and screening by Executive Branch archivists of such materials for the purpose of returning to appellant those that are personal and private in nature, and (2) determine the terms and conditions upon which public access may eventually be had to those materials that are retained.

Section 101(a) of the Materials Act directed the Administrator of the GSA (Administrator)[1] to "obtain, or retain, complete possession and control of all original tape recordings of conversations" involving President Nixon and other federal employees that were recorded in the White House or in the Office of the President "during the period beginning January 20, 1969, and ending August 9, 1974" (the period of the Nixon Presidency). Section 101(b)(1) directed the Administrator to obtain and retain

> complete possession and control of all papers, documents, memorandums, *transcripts*, and other objects and materials which constitute the Presidential historical materials of Richard M. Nixon, covering the period beginning January 20, 1969, and ending August 9, 1974. [Emphasis added.]

Section 104(a) directed the Administrator to submit to Congress proposed regulations that "would provide public access to the tape recordings and other materials referred to in section 101." It required that "[s]uch regulations shall take into account" seven specified factors, including "(1) the need to provide the public with the full truth, at the earliest reasonable date, of the abuses of governmental power popularly identified under the generic term 'Watergate;'" and "(6) the need to provide public access to those materials which have general historical significance...." Section 104(b)(1) provided that the regulations would become effective 90 days after submission to Congress unless either house of Congress disapproved them during that period.[2]

Although the transcripts are not "original tape recordings of conversations" under section 101(a), that section nevertheless may cover them on the theory that for the Administrator's control over the tapes to be effective, he also must have control over transcripts of the tapes. As the district court explained in this case in determining that the transcripts were not "agency records" under the Information Act, "[t]ranscribing a tape, like photocopying a document, is merely an act of reproducing information which originated elsewhere." It noted that in another case a court had held that for the "assertion of control" over agency documents "to be effective," it was "necessary to treat the original and duplicate as equals for FOIA purposes." In any event, we need not decide that question, because we conclude that section 101(b) covers the transcripts.

Section 101(b)(1) explicitly covers "transcripts ... which constitute the Presidential historical materials of Richard M. Nixon...." Section 101(b)(2) provides that for purposes of the subsection the term

---

**1.** The Materials Act was amended after this suit was filed to substitute the "Archivist" of the United States for the "Administrator." Pub.L. No. 98–497, § 107(a)(5)(A). The Archives is a part of the GSA. This change does not affect our analysis.

**2.** The Congress disapproved various proposed public access regulations. *See Nixon v. Administrator of General Services,* 433 U.S. at 437, 97 S.Ct. at 2787. After the Administrator finally promulgated regulations that Congress did not disapprove, a district court invalidated portions of the regulations because the Materials Act contained a one-house veto, which *Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), had held was unconstitutional. *Allen v. Carmen,* 578 F.Supp. 951 (D.D.C.1983). The GSA has informed us that the Administrator is preparing new regulations.

"historical materials" has the meaning given it by 44 U.S.C. § 2101 (1982). The latter section broadly defines "historical material" belonging to "a President or former President ... or related to his papers or to the events of his official or personal life" as "including ... documents, papers, ... sound recordings, and other objects or materials having historical or commemorative value."

The transcripts of the tape recordings are "documents" and if not, certainly are "other ... materials having historical ... value."

The GSA argues, however, that section 101(b) does not cover the transcripts because, unlike the tapes themselves, the transcripts were not made between January 20, 1969 and August 9, 1974. Only section 101(a), however, specifies that the materials it covers—"tape recordings of conversations"—must have been "recorded" during that period. In contrast, section 101(b)(1) covers "transcripts ... covering" that period. The transcripts in this case cover that period, since they are transcripts of tapes that were made, and that relate to events, during the period.

Nothing in section 101(b)(1) limits the coverage of that section to transcripts that themselves were made during that period. The section requires only that the transcripts "cover[ ]" the period, which these transcripts do.

The GSA further argues that since the transcripts may not be verbatim copies of the tape recordings because they differ from other transcripts made from the same tapes, they are not part of President Nixon's "historical materials" but are separate documents that the Watergate Force created. Any differences among the transcripts apparently resulted from flaws in the tapes themselves. The information contained in the transcripts, however, is the same as that contained in the tapes, which the transcripts essentially reproduce. *Cf. Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982). Whatever slight variations there may be between the tapes and

the transcripts the Watergate Force prepared do not warrant excepting the transcripts from the coverage of the Materials Act.

The GSA also argues that in *Warner Communications* the Supreme Court determined that section 101(b) of the Materials Act does not cover taped copies of the original tapes and that for the same reasons the section also does not cover transcripts of the tapes. The dissenting opinion of Justice White stated that section 101(b) "would reach copies" as well as original tapes. 435 U.S. at 612, 98 S.Ct. at 1319.

The Court, however, although indicating some doubt about that conclusion, stated that "we need not consider in this case what Congress may have intended by § 101(b)," since the Administrator "was not a party" and "the scope of § 101(b) has not been fully briefed or argued." 435 U.S. at 603–04 n. 15, 98 S.Ct. at 1315 n. 15. *Warner Communications* did not decide the question whether section 101(b) covers copies of the tapes and that decision is not inconsistent with and does not preclude our conclusion that that section covers the transcripts of the tapes involved in this case.

B. In *Warner Communications* the Supreme Court upheld the decision of the district court refusing to release for commercial use tape recordings that had been played at the Watergate trial, which Warner Communications intended "to copy ... for broadcasting and sale to the public." 435 U.S. at 591, 98 S.Ct. at 1308. The Court held that the Materials Act supported the district court's decision not to release the tapes. The Court pointed out that in the Materials Act "Congress has created an administrative procedure for processing and releasing to the public, on terms meeting with congressional approval, all of petitioner's Presidential materials of historical interest, including recordings of the conversations at issue here." 435 U.S. at 603, 98 S.Ct. at 1314, footnote omitted. It stated that

court release of copies of materials subject to the Act might frustrate the achievement of the legislative goals of

orderly processing and protection of the rights of all affected persons. Simply stated, the policies of the Act can best be carried out under the Act itself.

*Id.* at 606, 98 S.Ct. at 1316.

We conclude that release of the transcripts pursuant to the Information Act also "might frustrate the achievement of the legislative goals of orderly processing and protection of the rights of all affected persons." Here, too, "the policies of the [Materials] Act can best be carried out under the Act itself."

In the Materials Act Congress provided a comprehensive, carefully tailored and detailed procedure designed to protect both the interest of the public in obtaining disclosure of President Nixon's papers and of President Nixon in protecting the confidentiality of Presidential conversations and deliberations. *See Nixon v. Administrator of General Services,* 433 U.S. at 452–53, 97 S.Ct. at 2794–95. We conclude that the proper method by which the appellant Ricchio may seek disclosure of the Watergate Force transcripts of the Nixon tapes is by proceeding under the Materials Act and that she cannot proceed under the Information Act.

C. Finally, the appellants contend that even if the Materials Act covers the transcripts, section 104(d) of that Act permits the appellant Ricchio to proceed under the Information Act. Section 104(d) states:

The provisions of this title shall not in any way affect the rights, limitations or exemptions applicable under the Freedom of Information Act, 5 U.S.C. § 552 et seq.

The appellants argue that in *Reporters Committee for Freedom of the Press v. Sampson,* 591 F.2d 944, 948 (D.C.Cir.1978), we held that section 104(d) does not bar a proceeding under the Information Act seeking disclosure of Presidential materials covered by the Materials Act.

The appellants read the *Reporters Committee* decision too broadly when they assert that it authorizes the present suit under the Information Act to obtain disclosure of the Watergate Force's transcripts here involved. *Reporters Committee* dealt with a broad request for disclosure that apparently covered virtually all of President Nixon's Presidential papers. It was in the context of that request that the court stated that "the Materials Act does not bar processing of FOIA requests for the Presidential materials in question." 591 F.2d at 948.

The Materials Act initially covered an estimated 42 million pages of documents and 880 tape recordings. *See Nixon v. Administrator of General Services,* 433 U.S. at 449, 97 S.Ct. at 2793. Much of that material necessarily originated in agencies that, unlike the Office of the President, are subject to the Information Act. As we pointed out in *Reporters Committee,* "when the Materials Act was passed, Congress could well have believed that the FOIA would not cover all of Mr. Nixon's materials that related to Watergate or were of general historical interest." 591 F.2d at 948 n. 12. In *Reporters Committee* we did not consider whether the Materials Act covers particular items of President Nixon's Presidential papers, and held only that that Act did not preclude disclosure under the Information Act of the Nixon materials generally.

Although section 104(d) continues the applicability of the Information Act to much of President Nixon's Presidential materials, it does not cover the specific, narrowly limited material here involved. Appellant Ricchio seeks the transcripts of tape recordings of White House conversations of the President. The underlying tapes themselves not only are not subject to the Information Act but concededly are covered by section 101(a) of the Materials Act. As we explained above, the purpose and design of the Materials Act show that that Act and not the Information Act is the only method by which the appellant Ricchio may seek disclosure of the Watergate Force's transcripts of the tape recordings of President Nixon's White House conversations.

The judgment of the district court is *affirmed.*