**ZALE CORPORATION, Plaintiff,**

**v.**

**The UNITED STATES INTERNAL REVENUE SERVICE, Defendant.**

**Civ. A. No. 78-1571.**

United States District Court,
District of Columbia.

Dec. 14, 1979.

Richard E. Timbie, Graeme W. Bush, Ralph A. Muoio, Washington, D. C., for plaintiff.

Donald J. Gavin, Michael J. Salem, Patricia A. Scott, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

GESELL, District Judge.

This is another Freedom of Information Act ("FOIA")[1] suit arising out of an effort to inspect government documents relating to an on-going law enforcement investigation. In this instance, FOIA's preference for the public disclosure of governmental information must be reconciled with a necessity for confidentiality in federal tax administration recognized in the Tax Reform Act of 1976.[2]

Zale Corporation, a large Dallas-based retailer with over 1,300 wholly-owned subsidiaries, is under intensive investigation by the Internal Revenue Service ("IRS") for possible criminal and civil violations of the income tax laws. Not content to await the filing of formal charges, if any, and the subsequent opportunity to be fully apprised of the issues, Zale's knowledgeable tax counsel have proceeded to make an elaborate series of FOIA demands on IRS in an effort to obtain access to the Service's investigative materials, computations, witness statements, and theories. These tactics have delayed aspects of the investigation and caused considerable expenditure of time and effort by IRS personnel involved in the investigation of Zale's returns.[3]

The FOIA requests—there were four—covered more than 500,000 pages of documents and 350,000 computer cards.[4] Following 15 months of documentary analysis and processing by IRS and protracted negotiations between the parties, 55,000 pages of documents were released and many requests were abandoned.[5] At this juncture some 4,000 pages of tax return data organized under nine categories remain in dispute. About one-half of the dispute concerns Zale's request for the IRS Special Agents' Report itself. This enormously detailed document is at the core of the Service's major tax enforcement effort that may well involve civil deficiencies in excess of $100,000,000 and as many as 1,000 separate notices of deficiency, as well as possible criminal charges now being examined by a grand jury.

The parties have cross-moved for summary judgment. After reviewing the briefs and supporting affidavits, and conducting an *in camera* examination of some documents selected at random from the total package submitted by the IRS, the Court finds that the matter is ripe for decision.

Both Zale and the Service have approached this case as a pure FOIA action, apparently in the belief that the sole issue for decision is whether or not the contested documents are protected under exemptions 3[6] or 7(A)[7] of that Act, 5 U.S.C.

---

1. 5 U.S.C. § 552 (1976).

2. Pub.L. No. 94–455, § 1202(a)(1), 90 Stat. 1667 (1976), codified in 26 U.S.C. § 6103.

3. The substantial diversion of resources from the joint investigation has apparently jeopardized some phases of criminal enforcement under applicable statutes of limitation. *See* Affidavit of Frank C. Hider, Jr. ' 6(f), Exhibit C to defendant's motion for summary judgment.

4. The first request on December 29, 1977, encompassed some 64,000 pages. Three additional requests filed June 21, 1978, applied to over half a million pages of documents and computer cards.

5. A stipulation, signed February 26, 1979, limited Zale's June, 1978, requests to 17 categories of documents totalling some 11,000 pages.

6. Under 5 U.S.C. § 552(b)(3), the statutory disclosure requirements *do not apply to matters that are* specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes

§§ 552(b)(3), (b)(7)(A) (1976). The Court's analysis, however, raises an important consideration of statutory interpretation that must first be resolved, namely the meaning and effect of section 6103(e)(6) of the Internal Revenue Code of 1954, as amended. This section reads as follows:

(e) Disclosure to persons having material interest. . . .

(6) *Return Information* — [8] Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection [9] to inspect any return of such taxpayer *if the Secretary determines that such disclosure would not seriously impair Federal tax administration.* 26 U.S.C. § 6103(e)(6). (Emphasis added.)

The Court must determine whether section 6103(e)(6) was intended by Congress to be the sole standard governing the disclosure or non-disclosure of tax return information or whether it is only of significance here to the extent it may be said to provide support for a claim of exception under exemption 3 of FOIA. This question must be answered at the outset since, among other things, it affects the standard by which IRS's refusal to disclose documents must be reviewed in this Court.

The same Congress that amended exemption 3 by narrowing its scope [10] later enacted § 6103(e)(6) as part of the Tax Reform Act. Indeed the tax legislation was enacted three weeks after approval of the FOIA changes. Under accepted principles of statutory interpretation, courts have an obligation to construe statutes harmoniously where it is reasonable to do so. *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1972). *See generally*, Sutherland, *Statutes and Statutory Construction* § 53.01 (4th ed., C.D. Sands, 1972). This obligation is particularly compelling when a specific measure is enacted subsequent to a provision of general application. Absent a clear indication to the contrary, the specific legislation will not be controlled or modified by the more general, *see Bulova Watch Co. v. United States*, 365 U.S. 753, 758, 81 S.Ct. 864, 6 L.Ed.2d 72 (1951); *Castaneda-Gonzalez v. INS*, 183 U.S.App.D.C. 396, 564 F.2d 417, 423 (D.C. Cir. 1977); nor will the later provision be nullified in light of the earlier, *see Araya v. McLelland*, 525 F.2d 1194, 1196 (5th Cir. 1976); *International Union of Elec., Radio & Mach. Workers v. NLRB*, 110 U.S.App.D.C. 91, 289 F.2d 757, 761 (D.C. Cir. 1960). When the statutes are considered and acted upon by the same Congress, the Court's duty to reconcile the two becomes virtually irresistible. *See generally United States v. American Bldg. Maint. Indus.*, 422 U.S. 271, 277, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975); *United States v. One Bally Bounty In-Line Bingo-Type, Multiple Coin, Multiple Free-Play Pinball Machine*, 261 F.Supp. 187, 191 (D.Md.1966).

particular criteria for withholding or refers to particular types of matters to be withheld.

7. 5 U.S.C. § 552(b)(7)(A) exempts from disclosure

investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings.

8. Under 26 U.S.C. § 6103(b)(2), return information includes

a taxpayer's identity, the nature, source or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to

the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense . . ..

9. The individual taxpayer is so authorized. *See* 26 U.S.C. § 6103(e)(1).

10. The amendment was passed as part of the Government in the Sunshine Act, Pub.L. No. 94–409, § 5(b), 90 Stat. 1247 (1976). In adding provisos (A) and (B), Congress had an express narrowing purpose in mind following the Supreme Court's expansive reading of the exemption in *Administrator of FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975). *See* H.R.Rep. No. 1441, 94th Cong., 2d Sess. 24–25 (Conf. Report), *reprinted in* [1976] U.S. Code Cong. & Admin.News, pp. 2244, 2260·61.

In the instant case, Congress enacted the Tax Reform Act and its specifically crafted disclosure provision closely following its amendment to the general disclosure legislation of FOIA. Section 6103 propounds a comprehensive scheme for releasing information to discrete, identified requesting parties, including particular government officials, presidential designees, representatives of the taxpayer, and others with a material interest.[11] It represents Congress' effort to strike a proper balance between a citizen's reasonable expectation of privacy, with attendant consequences for the continued vitality of our voluntary tax assessment system, and the government's need for return information in implementing effective tax administration. See S.Rep. No. 938, Part I, 94th Cong., 2d Sess. 317–18, reprinted in [1976] U.S.Code Cong. & Admin. News, pp. 3439, 3747. There is no indication from the statutory language that Congress was in any way concerned with promoting or protecting public disclosure of tax return data.

The legislative proclamation of a rule of confidentiality with limited statutory exceptions constitutes a shift in emphasis from then existing law. Formerly the statute had identified tax returns as "public records"; their inspection was governed and restricted by a network of regulations and executive orders. See S.Rep. No. 938, Part I, 94th Cong., 2d Sess. 318, reprinted in [1976] U.S.Code Cong. & Admin.News, 3439, 3747; H.R.Rep. No. 1515, 94th Cong., 2d Sess. (Conf. Report) 475, reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 4118, 4180. At the same time, the secrecy of tax returns and related information has long been favored in practice, and it is not surprising that Congress would seek to carve out a special protection for this unique and highly sensitive type of information. This express purpose stands in sharp contrast to FOIA's stated preference for disclosure to the general public.

▪ In addition, the structure of section 6103 is replete with elaborate detail, identifying the discrete groups to whom disclosure of certain specified types of information is permissible. In this respect it differs markedly from the structure of FOIA, which calls for the release of information to the public at large with no showing of need required. Despite ample indication in the legislative history that Congress was aware of FOIA while it labored over the tax reform legislation,[12] there is no evidence of an intention to allow that Act to negate, supersede, or otherwise frustrate the clear purpose and structure of § 6103. For a court to decide that the generalized strictures of FOIA take precedence over this subsequently enacted, particularized disclosure scheme would in effect render the tax reform provision an exercise in legislative futility. Absent an indication that Congress so intended, this Court will not imply such a prospective pre-emption by FOIA.

■ Courts confronted with an exemption 3 claim frequently have been forced to extremes of analysis in order to reconcile conflicting statutory provisions without benefit of any useful legislative history. While statutory analysis is, of course, a proper function for the courts, it has too often, in the context of FOIA, required judges to abandon established rules of statutory construction and, in effect, to surmise what Congress intended. This case fortunately calls for the Court to apply more

11. The groups of individuals to whom limited disclosures are sanctioned consist of designees of the taxpayer, state tax officials, persons having material interest, some committees of Congress, the President and his designees, certain federal officers and employees engaged in tax administration, certain other federal officers and employees, and certain other persons identified pursuant to properly promulgated regulations. See 26 U.S.C. § 6103(c) through (o).

12. FOIA is frequently mentioned in that part of the Senate committee report addressing "writ-

ten determinations" by the Service (26 U.S.C. § 6110), which immediately precedes discussion of § 6103. See S.Rep. No. 938, Part I, 94th Cong., 2d Sess. 303–15, reprinted in [1976] U.S. Code Cong. & Admin.News, pp. 3439, 3732–44. Unlike tax return information, written determinations are designated to be presumptively available for public inspection. The fact that Congress has integrated the disclosure scheme for these written rulings with FOIA requirements and exemptions is therefore not surprising.

straightforward canons of statutory interpretation. If Congress meant something more or different from what is stated in § 6103, it must make this meaning known. It has not done so and accordingly the section must be viewed as the sole standard governing release of tax return information. Applicable review criteria under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. (1976), control the judicial assessment of IRS's action in withholding the documents sought by Zale.[13]

In determining whether or not the Service has correctly construed its discretionary disclosure obligations, the standard of review is a highly deferential one. The Court finds no basis for overcoming the heavy presumption favoring reviewability of agency action. Congress neither expressed nor implied that judicial review should be foreclosed and the standard governing IRS's action is well set out in the applicable statute. See generally Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Peoples v. USDA, 138 U.S.App.D.C. 291, 427 F.2d 561, 566–67 (D.C. Cir. 1970). Once the possibility of discretionary judgment has been recognized, however, the discretion vested in the agency in this instance is quite broad. The Court must accept the Service's

determination in this area of its acknowledged experience and technical competence so long as that determination is rational and has support in the record. See Atlantic Refining Co. v. FTC, 381 U.S. 357, 367–68, 85 S.Ct. 1498, 14 L.Ed.2d 443 (1965); NLRB v. Hearst Publications, Inc., 322 U.S. 111, 130–31, 64 S.Ct. 851, 88 L.Ed. 1170 (1944). De novo review is neither necessary nor desirable under such circumstances.

In its earlier exercise of administrative discretion, the Service elected to turn over thousands of pages of records, and prepared an index and detailed sworn justification for withholding the remaining documents. The task that remains for the Court is simply to assure itself that the decision to withhold was not an arbitrary or unconscionable abuse of discretion. The affidavits of Messrs. Hider and McCanless, the lead IRS attorney on the Zale investigation and the director of the Dallas district office, confirm the reasonableness of defendant's decision. These affiants have for some time been intimately involved in the preparation of enforcement actions against Zale. The clear import of their statements is that the documents constitute "return information" and any further disclosures

---

**13.** Although the Court concludes that Congress did not intend to apply the revised standards of exemption three to section 6103(e)(6), it is apparent that the tax reform provision would in any event be fully qualified for exemption under those standards. As discussed above, the enactment of § 6103 reflects clear congressional appreciation of the need to protect certain types of data. "Return information," the type of matter referred to, is sufficiently particularized in the careful and thorough definition found at 26 U.S.C. § 6103(b)(2). The particular criteria for withholding, a finding by the Secretary that disclosure "would not seriously impair federal tax administration," allows the Secretary to determine with adequate precision "whether disclosure in any instance would pose the hazard that Congress foresaw." American Jewish Cong. v. Kreps, 187 U.S.App.D.C. 413, 574 F.2d 624, 628–29 (D.C. Cir. 1978). This "seriously impair" standard also is closely analogous to the affirmative finding mandated by the language of the Atomic Energy Act, 42 U.S.C. § 2162(a) (1976) (disclosure if publication is "without undue risk to the common defense and security") which Congress indicated would satisfy exemption three as amend-

ed. See H.R.Rep. No. 880 Part I, 94th Cong., 2d Sess. 23, reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 2183, 2205. Thus both prongs of the exemption are satisfied. See Chamberlain v. Kurtz, 589 F.2d 827 (5th Cir. 1978), cert. denied, —— U.S. ——, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). See also Fruehauf Corp. v. IRS, 566 F.2d 574 (6th Cir. 1977).

The Secretary's determination here that the documents in dispute qualify for withholding is adequately supported by the lengthy and detailed affidavits submitted; in addition the Court's own in camera inspection confirms the validity of the decision to withhold. Because defendant's rationale for nondisclosure applies to each of the documents as a whole, there is no reason to search for segregable portions. See Hayden v. NSA, 608 F.2d 1381, 1388, 1390–1391 (D.C. Cir. 1979). Finally, it should be noted that other district courts applying FOIA to section 6103 have found tax return information to be exempted from disclosure under 5 U.S.C. § 552(b)(3). See, e. g., Anastas v. United States, No. 78–2823 (N.D.Cal., Aug. 7, 1979); Kanter v. IRS, 433 F.Supp. 812 (N.D.Ill.1979).

would seriously impair the joint investigation. The Hider affidavit discusses the nature of this impairment in great detail, identifying substantial adverse effects with respect to each of the nine disputed document categories. In the Service's view, further disclosure would damage the investigation by prematurely revealing transactions being investigated, the scope and limits of the government's knowledge, and specific evidence against plaintiff, including statements of witnesses and informers and agency work papers. The Court's review of the documents themselves suggests no reason to disturb the agency's considered judgment in this matter.

Defendant has established that its action in withholding was neither arbitrary nor an abuse of discretion. The Court must therefore grant defendant's motion for summary judgment and deny plaintiff's motion for partial summary judgment. The action is dismissed.

SO ORDERED.