**Dale H. GREEN, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, and James Caldwell, District Director, Defendants.**

**No. L 81–2.**

United States District Court,
N.D. Indiana,
Hammond Division.

Dec. 16, 1982.

Dale H. Green, pro se.

R. Lawrence Steele Jr., U.S. Atty., Hammond, Ind., Mitchell R. Berger, Tax. Div., U.S. Dept. Justice, Washington, D.C., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiff, Dale H. Green, purports to bring this action pursuant to the Freedom of Information Act (FOIA) and the Privacy Act against the Internal Revenue Service (IRS) and its District Director. The relief requested apparently includes access to and correction of various IRS records pertaining to plaintiff's tax returns and status as a tax protestor.

The plaintiff filed his original complaint on January 12, 1981. On March 11, 1981, plaintiff amended his complaint in response to an order requiring a more definite statement. The Amended complaint restricted the scope of this action to a document request addressed to the IRS dated September 26, 1980 though incorrectly identified as September 25, 1980 in the amended com-

plaint. In answer to plaintiff's amended complaint, defendants admitted they withheld from plaintiff two documents that fell within the scope of his request and that they had deleted the names of employees in the Service's Criminal Investigation Division from five other documents that were otherwise released to plaintiff in full. Seven affirmative defenses were interposed in support of the Service's nondisclosure of the two full documents and parts of five others, with each substantive defense correlated to specific documents. The defendants have moved for summary judgment. In plaintiff's response to defendants' motion for summary judgment, the plaintiff, pro se, admitted that the deletions of the names of the IRS agents on the five documents was valid. Therefore, the only issues remaining before this Court on defendants' motion for summary judgment are the nondisclosure of the two remaining documents and the requested amendment of plaintiff's IRS records.

The following material facts are not in dispute.

Plaintiff Dale H. Green, at all relevant times, has been the subject of an investigation by the Indianapolis District of the IRS for possible civil violations of the Internal Revenue Code for taxable year 1977. One area of this investigation pertains to Green's participation in or affiliation with the illegal tax protest movement. Prior to this lawsuit plaintiff made numerous requests for disclosure of documents maintained by the IRS. In response to those requests, the IRS has supplied numerous documents.

By letter dated September 26, 1980, plaintiff requested the Indianapolis District of the Service to disclose, ostensibly pursuant to the FOIA and the Privacy Act, various documents including records containing his name, several forms, and a copy of the Service's Illegal Tax Protestors Training Manual. On October 1, 1980, the Indianapolis District responded to this request, asking for verification that plaintiff had paid for copies of documents previously provided to him. The District also inquired whether

plaintiff wanted copies of all documents pertaining to him, or copies of only those documents not furnished in response to his earlier requests.

In a reply letter dated October 8, 1980, which the IRS received October 27, 1980, plaintiff submitted payment for copies he had received and stated that he sought only:

(1) Materials pertaining to his tax years 1975–1980 which the IRS had not disclosed previously;

(2) Monthly or quarterly surveillance reports on Dale H. or Loma G. Green;

(3) Documents pertaining to FBI Cointelpro projects or IRS Special Services Staff; and

(4) Form 3949, IRM 9383.6 and "any other materials not previously submitted."

By letter dated November 6, 1980, the IRS responded to plaintiff's requests, providing all material sought that were found to exist, except two documents that were withheld in full and five documents that were disclosed fully except for the deletion of the names of IRS CID employees. The FOIA exemptions permitting nondisclosure were made plain in the letter from the IRS.

One of the two documents withheld in full was a handwritten attachment to Form 3949, which is a "Criminal Investigation Information Item." The attachment contains a summary of information supplied to the Service by a confidential informant in connection with the ongoing investigation of plaintiff. The information pertains to plaintiff and to third party taxpayers. The other document withheld in full from plaintiff was a letter from the Indianapolis District Counsel of the Service to the United States Attorney for the Northern District of Indiana. That letter requests the United States Attorney to initiate legal proceedings to enforce an IRS summons that had been served on an officer of the State Bank of Remington in conjunction with the ongoing investigation of plaintiff.

The FOIA represents an attempt to foster citizen access to most categories of government records. It provides that all

documents should be disclosed to the public, upon proper request, unless specifically exempted by the Act itself. See *E.P.A. v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The exemptions are set forth in 5 U.S.C. § 552(b). Section 552(b)(3) of Title 5, United States Code protects from disclosure documents that are specifically designated as exempt by stat-.ute. Section 6103 of Title 26, United States Code is a statute within the meaning of Section 552(b)(3) and thus controls the disclosure of the first document at issue in this case. See, *Chamberlain v. Kurtz,* 589 F.2d 827 (5th Cir.), *cert. den.,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Barney v. Internal Revenue Service,* 618 F.2d 1268 (8th Cir.1980); *Fruehauf Corp. v. Internal Revenue Service,* 566 F.2d 574 (6th Cir. 1977).

■ Section 6103 of the Internal Revenue Code of 1954 regulates and largely proscribes the disclosure of tax returns or return information unless Section 6103 specifically designates a person as a proper recipient of return information, the general statutory rule that returns and return information remain confidential prevails. 26 U.S.C. § 6103(b)(2). This antidisclosure statute, thus, takes precedence over the FOIA where return information is sought. Congressional intent to constitute Section 6103 the exclusive means of obtaining access to return information appears clearly from a Senate Report that states:

> [T]he Committee felt that returns and return information should generally be treated as confidential and not subject to disclosure except in those limited situations delineated in the newly amended Section 6103 where the Committee decided that disclosure was warranted. S.Rep. No. 94–938, 94th Cong., 2nd Sess., at 317–318, U.S.Code Cong. & Admin.News 1976, pp. 2897, 3747.

But for narrow exceptions, no one may obtain the tax returns or return information of a third party, although Code Section 6103(e)(1) affords a taxpayer access to his own tax return. Even the taxpayer, however, may not obtain "return information" relating to him except under highly circumscribed conditions. Code Section 6103(e)(7) permits taxpayer inspection of his own "return information" only if "such disclosure would not seriously impair Federal tax administration."

In a leading case, the United States District Court for the District of Columbia disposed of the apparent conflict between the contrary disclosure policies of Section 6103 and of the FOIA by finding that Section 6103 overrides the FOIA when access is sought to tax return information. *Zale Corp. v. Internal Revenue Service,* 481 F.Supp. 486 (D.D.C.1979). The *Zale* outcome recently was endorsed by the Southern District of Indiana. *Wiley F. Green II v. Internal Revenue Service,* No. IP 80–646–C, Order and Memorandum of March 23, 1981. In *Zale,* Judge Gesell compared the rationale of Section 6103 and of FOIA and concluded that since Section 6103 was a later enacted and more specific statute which pertained solely to tax returns and return information, it must be viewed as the state controlling access to tax return information. 481 F.Supp. at 487. Judge Gesell found that the purpose of Section 6103 was to restrict access to a few named or described persons, in a marked and significant departure from the FOIA's general rule of disclosure to the public. The court also noted the elaborate detail of Section 6103, which it identified as a further difference from the generalized structure of the FOIA,.and stated that if the FOIA were to control access to tax return information, it would render Section 6103 meaningless. *Id.*

After concluding that Section 6103 was the sole standard governing release of tax return information, Judge Gesell considered the applicable standard of review. *Id.* He found that review was not foreclosed since Congress had not specifically barred it and because the Service's standards for exercising its discretion were well set out. *Id.* However, the court also recognized that the discretion vested in the Service by what is now Section 6103(e)(7) is quite broad and determined that the agency decision on "impairment of Federal tax administration"

was to be accepted so long as that determination was rational and had support in the record. *Id.* The court found such support in two affidavits which had been submitted by the IRS, which stated that the materials sought by Zale constituted tax return information whose disclosure would seriously impair a tax investigation. *Id.*, at 487, 490–491.

The *Zale* opinion has been adopted and followed by several courts in cases very similar to the case presently before the Court. *Kanter v. Internal Revenue Service,* 496 F.Supp. 1004 (N.D.Ill.1980); *Cal-Am Corp. v. Internal Revenue Service,* 80–1 U.S.T.C. para. 9421, 45 A.F.T.R.2d 80–1576 (C.D.Cal.1980); *Wolfe v. Internal Revenue Service,* 80–2 U.S.T.C. para. 9354, 45 A.F.T.R.2d 80–1565 (D.Colo.1980); *Bernal v. Internal Revenue Service,* 80–2 U.S.T.C. para. 9572, 46 A.F.T.R.2d 80–5040 (N.D.Cal.1980); *Anheuser Busch, Inc. v. Internal Revenue Service,* 493 F.Supp. 549 (D.D.C.1980). Further, in a summons enforcement case, *United States v. First National State Bank,* 616 F.2d 668, 672 n. 6 (3d Cir.), cert. denied, 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980), the Third Circuit cited *Zale* with approval and noted that it precludes use of FOIA as an evasion of restrictive discovery conditions in investigatory proceedings. These cases indicate that a target of an investigation cannot avoid the strictures of Section 6103 by resorting to the FOIA, that Section 6103 controls disclosure and that affidavits asserting serious impairment of tax administration that are not irrational and arbitrary are sufficient to preclude disclosure.

Defendants here have submitted the affidavit of the Acting Indianapolis District Director of the Service who knows the contents of Document 1 and the nature of the tax investigation of plaintiff. The affidavit shows unequivocally that Document 1 consists of third party "return information," entirely forbidden to plaintiff by Code Section 6103(a), and of plaintiff's own "return information," access to which is barred by Code Section 6103(e)(7) by virtue of the threat to tax administration that disclosure would pose.

Because of the Service's statutory obligation to insure confidentiality of tax returns and to safeguard tax investigations from disruption and impairment, review of the Service's assertion of Section 6103 does not arise under the *de novo* proceedings provisions of the FOIA. See, *e.g., Wiley F. Green v. Internal Revenue Service, supra,* at 3. Rather, invocation of Section 6103 must be reviewed under the Administrative Procedures Act, 5 U.S.C. Section 701, *et seq.* (APA). *Chrysler v. Brown,* 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979); *Zale v. Internal Revenue Service, supra;* see also *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Starr v. F.A.A.,* 589 F.2d 307 (7th Cir.1979).

In *Chrysler v. Brown, supra,* the Supreme Court held that Congress did not limit an agency's discretion to disclose information otherwise exempt from compelled disclosure when it enacted the FOIA. Thus, it followed necessarily that an entity submitting information to the Government had no right under the FOIA to enjoin a discretionary agency disclosure in response to a FOIA request. However, where the discretion to disclose was limited by a federal antidisclosure statute, there the Trade Secrets Act (18 U.S.C. Section 1905), the Supreme Court held that review of the agency decision to disclose information was available to Chrysler under the APA. 441 U.S. at 317–319, 99 S.Ct. at 1725–26. Having found that judicial review was available under APA, the Supreme Court next determined that the appropriate standard for review under the circumstances of that case was Section 706(2)(A) of the APA which provides that a reviewing court shall—

&ast; &ast; &ast; &ast; &ast; &ast;

(2) hold unlawful and set aside agency action, findings and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law

&ast; &ast; &ast; &ast; &ast; &ast;

The Supreme Court also noted that *"[d]e novo* review by the District Court is ordinarily not necessary to decide whether a contemplated disclosure runs afoul of Section 1905." *Id.* at 318, 99 S.Ct. at 1726.

In *Zale, supra,* the court determined that where a particularized disclosure statute such as Section 6103 was involved, *de novo* review was neither necessary nor desirable and review under the APA was limited to the task of determining that the decision to withhold was not an arbitrary or unconscionable abuse of discretion. 481 F.Supp. at 490–491; see also *Cal-Am v. Internal Revenue Service, supra; Wolfe v. Internal Revenue Service, supra.*

In *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), a decision cited in both *Chrysler* and *Zale,* the Supreme Court discussed the nature of judicial review under the arbitrary and capricious standard of Section 706(2)(A). First, the Court is required to decide whether the agency acted within the scope of its authority. *Id.* at 415, 91 S.Ct. at 823. Here, there can be no question that the statute authorizes the Service to determine that serious impairment of its work will arise from disclosure. If the agency acted within the scope of that authority, the reviewing court must find that—

> the actual choice made was not "arbitrary capricious, an abuse of discretion, or otherwise not in accordance with law." * * * To make this finding the Court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. * * * Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency.

*Id.* at 416, 91 S.Ct. at 823 (citations omitted).

■ Upon a careful review of the record in the case presently before the Court, the Court finds that the IRS did not act arbitrarily or capriciously in withholding document 1 from the plaintiff in this case.

■ The governmental privilege protects material reflecting the decisional or policy-making process of Government agencies. See, *e.g., ISI Corp. v. United States,* 503 F.2d 558 (9th Cir.1974); *Simons-Eastern Co. v. United States,* 55 F.R.D. 88 (N.D.Ga. 1972); *Weir Foundation v. United States,* 72–1 U.S.T.C. para. 9435, 29 A.F.T.R.2d 72–1225 (S.D.N.Y.1972), aff'd, 508 F.2d 894, 895 (2d Cir.1974); *Davis v. Braswell Freight Lines,* 363 F.2d 600 (5th Cir.1966); *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318 (D.D.C.1966), aff'd, 384 F.2d 979 (D.C.Cir.), cert. den., 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967); *Kaiser Aluminum & Chemical Corp. v. United States,* 157 F.Supp. 939 (Ct.Cl.1958). The courts in the above cases denied production of documents on the ground that internal agency documents containing the opinions, conclusions and reasoning reached by governmental officials in connection with their official duties are entitled to a qualified protection from disclosure.

The governmental privilege is based upon two important policy considerations. First, it was developed to promote frank expression and discussion among those upon whom rests the responsibility for making the determinations that enable the Government to operate. *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, supra.* Second, the privilege also is designed to shield from disclosure the mental processes of executive and administrative personnel. *International Paper Co. v. F.P.C.,* 438 F.2d 1349 (2d Cir.), cert. den., 404 U.S. 827, 92 S.Ct. 61, 30 L.Ed.2d 56 (1971).

The privilege applies to intra-governmental documents reflecting advisory opinions, recommendations and deliberations which comprise part of the process by which governmental decisions are formulated. Once claimed, the privilege protects material relating to the methods by which a decision is reached, as well as the matters considered, the contributing influences, and the role played by the work of others. *Carl Zeiss Stiftung v. Carl Zeiss, Jena, supra,* at 325–326. The privilege has also been held to

apply to: "[o]pinions, legal analysis and recommendations," *Weir Foundation v. United States, supra,* 72–1 U.S.T.C. at 84,523; 29 A.F.T.R.2d at 72–1229; "opinions, conclusions and reasoning of Government officials," *ISI Corp. v. United States, supra,* 503 F.2d at 559; "conclusions or opinions." *Simons-Eastern Co. v. United States, supra,* 55 F.R.D. at 89; material reflecting deliberative or policy-making processes, *EPA v. Mink,* 410 U.S. 73, 89, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973); and documents which are part of "the administrative reasoning process," *Kaiser Aluminum & Chemical Corp. v. United States, supra,* 157 F.Supp. at 946.

Congress expressly approved this common law privilege when it passed the FOIA by exempting these types of documents from disclosure in subsection (b)(5). The legislative history of the Act indicates that Congress intended the governmental privilege to be incorporated into the (b)(5) exemption:

> It was pointed out in the comments of many of the agencies that it would be impossible to have any frank discussion of legal or policy matters in writing if all such writings were to be subjected to public scrutiny. It was argued, and with merit, that efficiency in Government would be greatly hampered if, with respect to legal and policy matters, all Government agencies were prematurely forced to operate in a fishbowl.

S.Rep. No. 813, 89th Cong., 1st Sess. at 9 (1965). See also, H.Rep. No. 1497, 89th Cong., 2d Sess. at 10 (1966), U.S.Code & Admin.News 1966, pp. 2418, 2427. The Supreme Court has noted that it is "clear" that Congress had governmental privilege "specifically in mind in adopting Exemption 5." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975).

■ Numerous cases since the passage of the FOIA have repeatedly recognized that materials reflecting the deliberative or policymaking processes of the Government are protected from disclosure by the (b)(5) exemption. In *EPA v. Mink, supra,* the Supreme Court definitively interpreted this exemption:

> Virtually all of the courts that have thus far applied Exemption 5 have recognized that it requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual investigative matters on the other.

Thus, document 2 would come within Exemption 5 of the FOIA and be protected from disclosure on the basis of the governmental privilege.

The second document in question would also be protected from disclosure under Exemption 5 of the FOIA on the basis of the attorney-client privilege.

The attorney-client privilege was developed to promote full and complete freedom of consultation between clients and their legal advisors without fear of compelled disclosure, except with the client's consent. *Lee National Corp. v. Deramus,* 313 F.Supp. 224 (D.Del.1970); *United States v. Kelsey-Hayes Wheel Co.,* 15 F.R.D. 461 (E.D.Mich. 1954). This privilege constitutes judicial recognition of the need for confidentiality in the attorney-client relationship. *In re Penn Central Commercial Paper Litigation,* 61 F.R.D. 453 (S.D.N.Y.1973).

■ The privilege is applicable to communications from the attorney to the client, as well as communications to the attorney from the client, *Schwimmer v. United States,* 232 F.2d 855 (8th Cir.1956), and it also unquestionably is applicable to the relationship between Government attorneys and administrative personnel. *Detroit Screwmatic Co. v. United States,* 49 F.R.D. 77 (S.D.N.Y.1970); *United States v. Anderson,* 34 F.R.D. 518 (D.Colo.1963).

■ This privilege applies equally to inter-attorney communications or an attorney's notes containing information derived from communications to him from a client. That information is entitled to the same degree of protections from disclosure as the actual communication itself. *Natta v. Zletz,* 418 F.2d 633 (7th Cir.1969).

In enacting the FOIA, Congress specifically stated that it intended to include within the scope of exemption (b)(5) "documents which would come within the attorney-client privilege if applied to private parties." S.Rep. No. 813, 89th Cong., 1st Sess. at 2 (1965). That expression of legislative intent requires that the Service's invocation of Exemption 5 be upheld.

Plaintiff has also failed to prove that he is entitled to either the release of records or to amend certain records pursuant to the Privacy Act. Plaintiff has failed to supply any facts supporting his allegations regarding the recording of his First Amendment rights and Congress has specifically removed the jurisdiction of the district courts to order the deletion of information from IRS records as requested by plaintiff in this case. I.R.C. Section 7852(e); see, *Love v. Internal Revenue Service,* 80–2 U.S.T.C. ¶ 9520 (N.D.Ga.1980).

For the foregoing reasons, defendants' Motion for Summary Judgment is GRANTED and plaintiff's Amended Complaint is dismissed.