**Paul GRASSO**

v.

**INTERNAL REVENUE SERVICE, Appellant.**

**No. 85–5266.**

United States Court of Appeals, Third Circuit.

Argued Jan. 7, 1986.

Decided March 4, 1986.

---

W. Hunt Dumont, U.S. Atty., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard W. Perkins, Gayle P. Miller (argued), Tax Div., Dept. of Justice, Washington, D.C., for appellant.

Before ADAMS, SLOVITER and MANS-MANN, Circuit Judges.

### OPINION OF THE COURT

SLOVITER, Circuit Judge.

#### I.

*Facts and Procedural History*

The Internal Revenue Service (IRS) appeals an order of the district court permitting disclosure to Paul Grasso, plaintiff-appellee, under the Freedom of Information Act of portions of a Memorandum of Interview with Grasso prepared by agents of the Internal Revenue Service in the course of an investigation of his civil and criminal tax liability.[1]

No material facts are in dispute. Grasso was interviewed by two Internal Revenue Service (IRS) agents in January 1984. In March 1984, Grasso made a request under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, for a report or memorandum of the interview. The IRS responded by giving Grasso a four-page memorandum of the interview from which significant portions had been deleted. In a letter accompanying this document, the IRS stated that "[c]ertain information ... has been excised in accordance with the exemption cited in 5 U.S.C. 552(b)(7)(A) and (b)(3)" of FOIA. App. at 8a.

Grasso appealed the decision to excise portions of the memorandum to the Commissioner of Internal Revenue. The IRS acknowledged the appeal, but failed to take any action on it within the statutory time period for such response. *See* 5 U.S.C. § 552(a)(6)(A)(ii). Thereafter, Grasso filed this action, alleging that the IRS' withholding of the memorandum of the interview with Grasso was unlawful, and unsupported by any exemption of FOIA. In its answer, the IRS asserted that FOIA was inapplicable and that section 6103 of the Internal Revenue Code of 1954, as amended, governed the disclosure or nondisclosure of the document. In the alternative, the IRS alleged that the document was exempt from disclosure pursuant to FOIA sections in 5 U.S.C. §§ 552(b)(3), (b)(7)(A) and (b)(7)(C).[2]

The parties filed cross-motions for summary judgment. After oral argument, and an in camera inspection of the document by the district court, the district court ordered the IRS to produce the requested document within 60 days. The court rejected the IRS' assertion that federal tax administration would be seriously impaired if the IRS "turn[ed] back to the person who gave you information the same information that person gave you." App. at 51a. The court stated that the document, albeit not a verbatim statement, contains no evaluation by the interviewing agent and that "[e]ach of the excised items purports to reflect what Grasso said." App. at 55a. The court also noted that Grasso would get the statement if he was prosecuted. The court delayed imposition of its order for sixty days to enable the IRS to complete its investigation of Grasso, and denied Grasso attorney's fees. The IRS appealed, and the district court then stayed its order pending appeal.

#### II.

*Applicability of FOIA*

As the Supreme Court has pointed out, FOIA is a "broadly conceived" statute designed "to permit access to official information long shielded unnecessarily from public view." *EPA v. Mink,* 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). It requires that government agencies make available official information "for public inspection". *Id.* at 79, 93 S.Ct. at 832. However, because "Congress realized that

1. The appellee chose not to participate in the appeal. He filed no appellate brief, although counsel submitted copies of the brief he filed in the district court. He also elected not to present oral argument. Ordinarily, this court does not hear argument from only one party, but in these unusual circumstances, we chose not to deprive the government of the opportunity to present oral argument in support of its appeal.

2. The exemption contained in 5 U.S.C. § 552(b)(7)(C) is patently inapplicable, and the IRS has not pressed it on appeal.

legitimate governmental and private interests could be harmed by release of certain types of information," it included nine exemptions to FOIA's disclosure requirements. *FBI v. Abramson*, 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 75 L.Ed.2d 376 (1982). *See* 5 U.S.C. § 552(b). Of these, two are relevant here.

Exemption 7(A) exempts from disclosure investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings.

5 U.S.C. § 552(b)(7)(A). Exemption 3(B) allows an agency to refuse to disclose matters that are

specifically exempted from disclosure by statute ... provided that such statute ... (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3)(B).

The IRS argues that the document sought by Grasso falls within Exemptions 7(A) or 3(B). It also claims, in the alternative, that FOIA is inapplicable because it was superseded by section 6103 of the Internal Revenue Code, which bars disclosure of "returns and return information".

We consider first the government's contention that section 6103 of the Internal Revenue Code supersedes the Freedom of Information Act. This issue has divided the circuits. This court has not yet ruled on the question. The district court did not decide the issue, although it noted that the IRS had relied on FOIA in denying Grasso the complete document, and had not initially contended that the standard for production was governed by section 6103 rather than FOIA.

■ The provision that the government contends is exclusively applicable, section 6103(e)(7), provides:

(e) Disclosure to persons having material interest. . . .

(7) Return Information

Return information with respect to any taxpayer may be open to inspection by or disclosure to any person authorized by this subsection to inspect any return of such taxpayer if the Secretary determines. that such disclosure would not seriously impair Federal tax administration.

26 U.S.C. § 6103(e)(7). The statute defines "return information" to include:

(A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or *any other data*, received by, recorded by, prepared by, *furnished to*, or collected by *the Secretary with respect to a return* or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense.

26 U.S.C. § 6103(b)(2)(A) (emphasis added). The memorandum recording information furnished by the taxpayer to the IRS with respect to his own tax liability is return information. *See Linsteadt v. IRS*, 729 F.2d 998, 1000 (5th Cir.1984).

The principal consequence of finding that section 6103, rather than FOIA, is the applicable provision covering disclosure is the greater deference under section 6103 accorded an IRS decision not to disclose information. Under FOIA, a court reviewing an agency decision not to disclose must conduct a de novo review and the agency must bear the burden to justify nondisclosure under one of the statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B). If section 6103 preempts FOIA, then the provisions of the Administrative Procedure Act govern, and court review is limited to determining if the agency decision not to disclose was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). FOIA also specifies procedures that are not required by the

Internal Revenue Code, such as the requirement that the agency respond within 10 days to the request for information and within 20 days to appeals from a denial of disclosure, *see* 5 U.S.C. § 552(a)(6)(A)(i) & (ii), and a provision for expedited judicial consideration of FOIA suits, *see* 5 U.S.C. § 552(a)(4)(D). FOIA also requires the agency to provide disclosable material when it can be segregated from nondisclosable material. *See* 5 U.S.C. § 552(b).

The government argues that under the basic principle of statutory construction that specific statutes take precedence over general ones, section 6103 dealing specifically with disclosure of return information takes precedence over the more generally applicable FOIA. This was the argument accepted by the court in *Zale Corp. v. IRS,* 481 F.Supp. 486 (D.D.C.1979).

In *Zale,* the court viewed section 6103 as providing a "comprehensive scheme for releasing information to discrete, identified requesting parties." *Id.* at 489. The *Zale* court described section 6103 as representing a "legislative proclamation of a rule of confidentiality with limited statutory exemptions," a policy that the court considered incompatible with the policy of FOIA, which allows disclosure without a showing of need. *Id.*

The Seventh Circuit and several district courts have since adopted the approach of *Zale. See King v. IRS,* 688 F.2d 488, 495 (7th Cir.1982); *Green v. IRS,* 556 F.Supp. 79, 82–83 (N.D.Ind.1982), *aff'd,* 734 F.2d 18 (7th Cir.1984); *Watson v. IRS,* 538 F.Supp. 817, 818 (S.D.Tex.1982). *Cf. White v. IRS,* 707 F.2d 897, 900 (6th Cir.1983) (court "disposed to affirm" on the basis of *Zale* and *King* ).[3]

On the other hand, three courts of appeal have concluded that section 6103 does not supersede FOIA. *See Long v. United*

States *IRS,* 742 F.2d 1173, 1178 (9th Cir. 1984); *Linsteadt v. IRS,* 729 F.2d 998, 1001–03 (5th Cir.1984); *Currie v. IRS,* 704 F.2d 523, 526–28 (11th Cir.1983); *Chamberlain v. Kurtz,* 589 F.2d 827, 835–40 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979). *Cf. Barney v. IRS,* 618 F.2d 1268, 1274 n. 15 (8th Cir. 1980) ("inclined to agree" with *Chamberlain* ). One of the other district judges in the same district as *Zale* was unpersuaded by *Zale* and reached a contrary conclusion in *Britt v. IRS,* 547 F.Supp. 808 (D.D.C. 1982).

In its decision in *Long,* the Ninth Circuit noted that nothing in the language of section 6103 or its legislative history indicated that Congress intended section 6103 to operate independently. 742 F.2d at 1177. The court was also not persuaded by the government's argument that section 6103, a "specific nondisclosure statute", is irreconcilable with FOIA, a "specific disclosure" statute. *Id.* at 1178. The court held that the policies expressed in section 6103 could be reconciled with FOIA through Exemption 3 which incorporates criteria contained in specific nondisclosure statutes. The court reasoned that if section 6103 were not subject to FOIA, it would render Exemption 3 meaningless. *Id.* The court stated:

> If an exemption statute's purpose were determinative, then we would have to treat all exemptions statutes as independent of FOIA, a result clearly not consonant with FOIA.

*Id. Cf. Breuhaus v. IRS,* 609 F.2d 80, 82–83 (2d Cir.1979) (holding that section 6103 qualifies as a FOIA exemption).

We conclude, as did the Ninth, Fifth and Eleventh Circuits, that section 6103 operates within the confines of FOIA. Our view of the legislative history supports this

---

**3.** In *United States v. First National State Bank of New Jersey,* 616 F.2d 668 (3d Cir.), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2987, 64 L.Ed.2d 854 (1980), this court rejected a taxpayer's contention that summonses to third-party record keeper banks were invalid because of the IRS' alleged institutional bad faith. In a footnote, we observed that the *Zale* holding was "interesting

to note" because it "preclude[d] a taxpayer from employing a [FOIA] request to obtain information by an 'end run' around the restrictive discovery conditions" for tax cases set forth in an earlier case. *Id.* at 672 n. 6. We reject the IRS' contention that this dictum represents a holding that *Zale* was correctly decided, since the FOIA issue was patently not before the court.

position. Congress enacted the Tax Reform Act of 1976, which amended section 6103, and amended FOIA's Exemption 3 within one month of each other. *See* Comment, *Applying the Freedom of Information Act to Tax Return Information*, 69 Geo.L.J. 1283, 1288 (1981). However, there is no indication in the legislative history of either statute that Congress intended section 6103 to operate independently of FOIA. *Id.* at 1298–1303.

■ Instead, it is clear from the legislative history of section 6103 that it was designed to rectify a number of abuses that had occurred with respect to tax information disclosure. As we noted in *United States v. Bacheler*, 611 F.2d 443, 445–46 (3d Cir.1979), before 1976 there had been extensive disclosure of tax returns under Executive Orders to state and local tax authorities, numerous congressional committees, and various federal departments and agencies. Congress was concerned that tax returns were not being accorded appropriate protection and care, and that they were being used for political purposes for harassment through the Internal Revenue Service. *Id.* at 446. Congress intended, by amending section 6103, to protect the taxpayer's right to privacy and confidentiality in return information, while at the same time to afford disclosure to those congressional committees and federal and state authorities which had legitimate needs for such information. *Id.* (citing S.Rep. No. 94–938, 94th Cong., 2nd Sess. (Part I), *reprinted in* 1976 U.S.Code Cong. & Ad.News p. 3439). It is thus evident that section 6103 was not designed to displace FOIA, which itself contains an adequate exception from disclosure for materials protected under other federal statutes.

Moreover, we deem it particularly significant that the Tax Reform Act of 1976 itself contains a provision that does supersede FOIA. Section 6110, which deals with disclosure of letter rulings, expressly provides that it is the exclusive provision governing disclosure of the material covered in that section. *See* 26 U.S.C. § 6110(*l*). Of course, Congress included no such provision in section 6103. *See generally* Comment, *supra*, at 1298–1303.

Finally, section 6110 contains specific procedures for disclosure of IRS written determinations.[4] In contrast, section 6103 provides only a substantive standard, and thus can more reasonably be viewed as subsumed into exemption 3 of FOIA.

■ We believe that FOIA and section 6103 can be viewed harmoniously through the operation of Exemption 3. This approach better effectuates our view of the intent of Congress as reflected in the statutory language and the legislative history. We thus conclude that FOIA is the applicable statute by which Grasso's request for disclosure should be governed.

We turn then to the IRS'· contention that the material requested is protected because it falls within Exemption 7(A) and Exemption 3(B). For the purpose of this case, their scope is similar.

### III.

### *Exemption 7(A) of FOIA*

Exemption 7 exempts from disclosure [I]nvestigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings....

5 U.S.C. § 552(b)(7)(A). For purposes of this appeal, we assume that the memorandum of Grasso's interview is an "investigatory record[ ] compiled for law enforcement purposes." The question then is whether its disclosure would "interfere with enforcement proceedings." *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214,

---

4. In this regard, section 6110 is like the Presidential Recordings and Materials Preservation Act, 44 U.S.C. § 2111 (PRMPA), which has recently been held to have preempted FOIA. *See Ricchio v. Kline*, 773 F.2d 1389, 1395 (D.C.Cir. 1985). The PRMPA, which was designed specif-

ically to govern disclosure of President Nixon's papers and other materials, was held to be the solely applicable statute by which to measure a request for certain of the Watergate tapes in the possession of the General Services Administration.

216, 98 S.Ct. 2311, 2314, 57 L.Ed.2d 159 (1979).

In *Robbins Tire*, the Supreme Court explained that, "[f]oremost among the purposes of this Exemption was to prevent 'harm [to] the Government's case in court,' ... by not allowing litigants 'earlier or greater access' to agency investigatory files than they would otherwise have." *Id.* at 224, 98 S.Ct. at 2318 (citations omitted).

To support its claim under Exemption 7(A), the IRS produced affidavits from the Acting District Director of the IRS in Newark and a Special Agent of the IRS' Criminal Investigation Division in Newark. Both affidavits assert in almost identical language, that

> [t]o the extent the plaintiff does not recall exactly what was said, release of the documents in issue will prematurely reveal this evidence. In addition, release of the questions and answers (or absence of answers) contained in the materials in issue in this suit may indicate which items of evidence the Service will rely upon in any future proceedings brought against Mr. Grasso.

App. at 27a–28a, 31a.

They also state:

> To the extent plaintiff's recollections are incomplete, release of the information in issue would refresh his recollection, thereby revealing the names of witnesses or potential witnesses, and transactions being investigated.

App. at 31a. *See* App. at 28a. Both affiants suggest that disclosure would enable Grasso to harass or intimidate witnesses. The affidavits conclude that in the opinion of the affiants, release of the document would impair federal tax proceedings and interfere with IRS enforcement activities.

The district court characterized the affidavits as "largely conclusory," App. at 50a, and decided to conduct an in camera examination of the document. Thereafter, the trial judge returned and reported that his analysis "leads to the conclusion ... that all of it deals with what Grasso is alleged to have said to the interviewing agent," App. at 53a, that none of it was work product, and that it should be released because "I just can't see the harm to the government in turning over this excised material." App. at 54a.

In the two cases presenting similar facts on which the IRS relies, *Linsteadt v. IRS,* 729 F.2d 998 (5th Cir.1984), and *Willard v. IRS,* 776 F.2d 100 (4th Cir.1985), the district courts had upheld the IRS' claim that disclosure of the taxpayers' memoranda of their own interviews would significantly interfere with IRS enforcement proceedings. In *Linsteadt,* the court concluded that the district judge's finding of fact following in camera inspection was entitled to deference. 729 F.2d at 1005. In contrast, in this case, Judge Lacey, the trial judge, found that the IRS had not shown that disclosure of the remainder of Grasso's own statement would interfere with enforcement proceedings.

■ The situation posed when the requester seeks disclosure of his or her own statement is far different from that presented when s/he seeks statements of third party witnesses. The Supreme Court treated prehearing disclosure of witnesses' statements in NLRB proceedings as a type of generic category exempt from disclosure under Exemption 7(A). *See NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. at 236–243, 98 S.Ct. at 2323–2327. Other courts have upheld an agency's use of Exemption 7(A) to decline disclosure of statements of witnesses in other agency proceedings as well. *See, e.g., J.P. Stevens & Co., Inc. v. Perry,* 710 F.2d 136, 141 (4th Cir.1983); *Doyle v. Behan,* 670 F.2d 535, 538 (5th Cir.1982); *Barney v. IRS,* 618 F.2d 1268, 1272–73 (8th Cir.1980).

■ The usual rationale given for such holdings is the danger of witness intimidation, *Robbins Tire,* 437 U.S. at 239–40, 98 S.Ct. at 2325–2326, the witness' desire to maintain confidentiality, *id.* at 240, 98 S.Ct. at 2326, and concern that premature disclosure would create a chilling effect on potential witnesses and dry up sources of information. *See J.P. Stevens,* 710 F.2d at 143.

None of these reasons seem applicable to disclosure of the requester's *own* statement. As the court stated in *Campbell v. Department of Health & Human Services*, 682 F.2d 256, 259 (D.C.Cir.1982), "to prevail under Exemption 7(A), the government must show, by more than conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding." Referring to a somewhat analogous situation, the court suggested that when the documents requested are those of a company that itself submitted the information, it is unlikely that their disclosure could reveal to the company the direction of the agency's investigation or alert the company to anything it does not know already. *Id.* at 260. The typical Exemption 7(A) situation arises when the documents sought are those generated within the agency or otherwise " 'not in the possession of known or potential defendants.' " *Id.* at 262 (quoting *Freedom of Information Act and Amendments of 1974 (P.L. 93–502): Source Book: Legislative History, Texts, and other Documents* 333 (1975) (remarks of Senator Hart)). The concerns to which Exemption 7(A) is addressed are patently inapplicable here.

 We do not foreclose the possibility that in some situations the memorandum of the individual's own statement may be exempt from disclosure, as, for example, when it discloses the direction of potential investigation to be followed. In this case, however, we are satisfied that the district court's finding that the IRS had not met its burden of showing that disclosure would impair the IRS' investigation within the meaning of Exemption 7(A) was not erroneous.

## IV.

### *Exemption 3(B) of FOIA*

 The remaining basis on which the IRS relies to withhold disclosure, Exemption 3, allows agencies to refuse to disclose matters that are specifically exempted from disclosure by statute ..., provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).

Grasso conceded in the district court that section 6103 qualifies as a statute that "establishes particular criteria for withholding information," and all courts that have considered the question agree. *See, e.g., Linsteadt v. IRS*, 729 F.2d at 1003; *Chamberlain v. Kurtz*, 589 F.2d at 840; *Fruehauf Corp. v. IRS*, 566 F.2d 574, 578 (6th Cir. 1977). Thus, the question is whether section 6103 specifically exempts the material in question, which in turn requires a determination whether the IRS has demonstrated that disclosure of this document, which is return information, would seriously impair federal tax administration.

Although there are situations where Exemptions 3(B) and 7(A) would not be coextensive, *see, e.g., J.P. Stevens & Co., Inc. v. Perry*, 710 F.2d 136 (4th Cir.1983), in this case analysis of Exemption 3 does not differ significantly from the analysis of Exemption 7(A) undertaken above. If disclosure of the document would not "interfere with enforcement proceedings" under the tax laws (the applicable standard under Exemption 7), it would certainly not "seriously impair" the administration of those laws (the section 6103 standard incorporated into Exemption 3). Indeed, one of the affidavits submitted in this case appears to equate the two. *See* App. at 26a–28a. Our decision upholding the district court's determination as to the nonapplicability of Exemption 7 applies equally in this case to Exemption 3.

## IV.

For the foregoing reasons, we will affirm the judgment of the district court.

ADAMS, Circuit Judge, concurring.

The question of what law controls judicial review of Internal Revenue Service (IRS) decisions concerning disclosure of "return information" is a difficult as well as an important one. It is unfortunate that the applicable enactments do not provide clearer guidance, particularly for cases such as this that present the potentially troubling use of disclosure statutes to allow the target of an ongoing criminal investigation to inquire into the progress of that investigation.

Today, the Court decides that the Freedom of Information Act (FOIA), and not the facially relevant statute in the Internal Revenue Code, 26 U.S.C. § 6103(e)(7) (1982), controls judicial review of disclosure decisions. Arguments presented by the IRS in favor of application of § 6103(e)(7) in the present situation are not without force: in general, specific provisions govern in place of general statutes, and later enactments take precedence over earlier ones. *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482–83, 41 L.Ed.2d 290 (1974). Both of these rules would favor adherence to the Internal Revenue Code provision alone. But these principles by themselves do not relieve a court of its duty to attempt to give meaning to all Congressional pronouncements. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Id.* at 551, 94 S.Ct. at 2483.

In my view, the majority has persuasively reconciled the statutes at issue here. Section 6103(e)(7), upon which the IRS relies, contains no provision setting forth judicial review, and there is no statement of legislative intent to explain this omission. In contrast, the Freedom of Information Act allows criteria for review that are detailed in other statutes to be employed along with FOIA procedures, 5 U.S.C. § 552(b)(3)(B) (1982), and therefore provides a vehicle for giving effect to each statute.

Finally, as Judge Sloviter explains, it is noteworthy that § 6110, another IRS disclosure statute included in the Tax Reform Act of 1976 that also produced § 6103(e)(7), was written as the exclusive method of disclosure of material covered by § 6110 and set forth its own procedures for judicial review. *See* 26 U.S.C. § 6110 (1982).[1] These provisions in § 6110, and references in the legislative history concerning the enactment of the statute, suggest that Congress was aware of FOIA at the time it enacted the Tax Reform Act, and yet it made no attempt to bar the application of FOIA to § 6103(e)(7). *See* S.Rep. No. 94–938, Pt. I, 94th Cong., 2d. Sess. 303–15 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 3439, 3732–44.[2] This observation reinforces the view that FOIA and § 6103(e)(7) may be read harmoniously.

I remain concerned that the application of FOIA to the disclosure of "return information" during criminal investigations may result in more liberal disclosure than Congress consciously intended; indeed, I am skeptical that Congress contemplated the result in this case. Nevertheless, the majority opinion fulfills the responsibility of the courts to give all possible effect to each Congressional enactment, and for that reason I concur in the result reached. If Congress disagrees, as it very well may, a simple amendment can readily clarify its intent.

1. The provision later codified as § 6110 immediately preceded that which became § 6103. *See* Tax Reform Act of 1976, Pub.L. No. 94–455, § 1201, 90 Stat. 1660 (codified as amended at 26 U.S.C. § 6110); *id.* at § 1202, 90 Stat. 1667 (codified as amended at 26 U.S.C. § 6103).

2. Indeed, the discussion of FOIA in the Senate report concerning § 6110 directly precedes the discussion of § 6103 which includes no reference to FOIA. *See* S.Rep. No. 94–938, Pt. I at 315, *reprinted in* 1976 U.S.Code Cong. & Admin. News at 3744.

Neither *Zale Corp. v. IRS*, 481 F.Supp. 486 (D.D. C.1979), nor any court to follow *Zale* has addressed the import of § 6110 to the question at issue in this case.