**The WASHINGTON POST COMPANY, Appellant,**

v.

**UNITED STATES DEPARTMENT OF STATE, et al., Appellees.**

No. 80–2469.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 17, 1981.

Decided Aug. 13, 1982.

Opinion on Denial of Rehearing En
Banc Dec. 28, 1982.

Robert C. Post, Washington, D. C., with whom John B. Kuhns and David E. Kendall, Washington, D. C., were on the brief, for appellant.

Nathan Dodell, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty. at the time the brief was filed, Washington, D. C., Royce C. Lamberth and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellees.

Before GINSBURG, Circuit Judge, McGOWAN, Senior Circuit Judge, and FRIEDMAN *, Chief Judge of the United States Court of Claims.

Opinion for the Court filed by Senior Circuit Judge McGOWAN.

Separate concurring opinion filed by Chief Judge FRIEDMAN.

McGOWAN, Senior Circuit Judge:

This appeal in a Freedom of Information Act (FOIA) case presents the question of whether the District Court, having rejected the Government's contention that two pre-FOIA statutes qualified as a statutory prohibition of disclosure under Exemption 3 of FOIA, properly went on to hold that there could be inferred from such statutes and their historical context an intention by Congress that disclosure should not be made despite the unavailability of any FOIA exemption.

In its appeal to this court, the Government's presentation is largely confined to a reassertion of the only contention made by it in the District Court, namely, that Exemption 3 applied. Alternatively, it relies upon the ground of decision volunteered by the District Court. We affirm the District Court's ruling in the former regard, but not in the latter.

I

By letter dated October 3, 1979, appellant *Washington Post*, through its reporter Ronald Kessler, submitted a FOIA request to the Department of State seeking access to all materials pertaining to the Department's Fine Arts Committee. J.A. at 8. Appellant subsequently supplemented that request, seeking as well the ledger sheets and schedules of disbursements and receipts with respect to account 19X8822 and the Secretary of State's fund for "Emergencies in the Diplomatic and Consular Service" (Emergency Fund). J.A. at 9. The supplemental request sought only such records as pertained to the previous three years.

Appellant's request was denied only with respect to materials relating to the Emergency Fund. The *Post* was so notified by letter dated October 29, 1979, which cited 22 U.S.C. § 2671 (1976) and 31 U.S.C. § 107 (1976) as the bases for the denial. J.A. 10. The *Post* challenged the denial before the Appeals Review Panel of the State Department, which affirmed the decision to withhold. The Panel indicated that the two previously cited statutes operated to provide an exemption from disclosure under FOIA for material relating to the Emergency Fund by reference to Exemption 3. 5 U.S.C. § 552(b)(3) (1976). J.A. at 16. The *Post* challenged this determination in a suit filed in the District Court.

In the District Court, the Department of State filed a motion for summary judgment following some preliminary discovery. J.A. at 53. The *Post* cross-moved for summary judgment and partial summary judgment, claiming with regard to the latter that issues of fact remained to be decided. J.A. at 72, 76. On November 24, 1980, the District Court filed a Memorandum and Order granting the Department's motion and de-

---

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

nying those of the *Post.* 501 F.Supp. 1152 (D.D.C.1980).

The District Court relied, however, not on Exemption 3 or, indeed, on any of the FOIA exemptions. In fact, it ruled explicitly, contrary to the Government's contention, that Exemption 3 was not applicable. It turned instead to Congress's long-exercised power, under the Statement and Account Clause of the Constitution,[1] to maintain secrecy in foreign affairs expenditures in general, and in the Emergency Fund in particular. The court detailed a lengthy history of delegation by Congress to the Executive of the authority to make foreign affairs payments without disclosing them. In the case of the Emergency Fund, the court found evidence that Congress, in its regular oversight over the fund, and particularly in passing, after FOIA, legislation subjecting Emergency Fund expenditures to limited audit by the General Accounting Office, had delegated such authority. 501 F.Supp. at 1156–57. The court suggested that such legislation would be rendered meaningless if material accounted for secretly were subject to disclosure under FOIA. It concluded that

> [u]nder these circumstances, the Court will not impute to Congress the intent for such radical disclosures under FOIA, or the abandonment of its constitutional power, and the plenary authority of Congress in this area will be respected.

501 F.Supp. at 1157. It is from this holding that the *Washington Post* appeals.

## II

■ The Freedom of Information Act embodies, in the contemplation of Congress, "a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language . . . ." S.Rep.No.813, 89th Cong., 1st Sess. 3 (1965). The Act pursues this result by combining a general command of broad disclosure, 5 U.S.C. § 552(a) (1976), with nine specific exemptions. 5 U.S.C. § 552(b) (1976). "It is a commonplace that the former is to be generously construed while the latter are narrowly circumscribed." *Irons and Sears v. Dann,* 606 F.2d 1215, 1219 (D.C.Cir.1979), *cert. denied,* 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980). *See generally Baldridge v. Shapiro,* —— U.S. ——, 102 S.Ct.

1103, 1108, 71 L.Ed.2d 199 (1982). In the absence of a statutory exemption, the court has no general equitable power to prevent disclosure of documents. *Getman v. NLRB,* 450 F.2d 670 (D.C.Cir.1971). As the Supreme Court explained in *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978):

> Congress carefully structured nine exemptions from the otherwise mandatory disclosure requirements in order to protect specified confidentiality and privacy interests. But unless the requested material falls within one of these nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public.

*Id.* at 220–21, 98 S.Ct. at 2316–2317 (footnote omitted). *See also Department of the Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. 1592, 1598–1599, 48 L.Ed.2d 11 (1976); *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 136–37, 95 S.Ct. 1504, 1509–1510, 44 L.Ed.2d 29 (1975); *EPA v. Mink,* 410 U.S. 73, 79–80, 93 S.Ct. 827, 832–833, 35 L.Ed.2d 119 (1973).

The exemption claimed by the Department to be applicable in this case is Exemption 3, which excludes from the coverage of FOIA, matters

> specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3) (1976). In particular, the Department relies on the second proviso of the exemption. Originally this exemption protected only material "specifically exempted from disclosure by statute." In 1976, however, Congress amended it for the specific purpose of closing the gap created by an expansive reading of the exemption by the Supreme Court. Pub.L.No. 94–409, 90 Stat. 1247 (1976). *See* H.R.Rep.No. 880 (Part I), 94th Cong., 2d Sess. 23 (1976); H.R.Rep.No.1441, 94th Cong., 2d Sess. 25 (1976) (Conference Report), U.S.Code Cong. & Admin.News 1976, p. 2183.

---

1. Article I, § 9, cl. 7 provides:

 No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law; and a regular Statement and

 Account of the Receipts and Expenditures of all public Money shall be published from time to time.

In *Administrator, FAA v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975), the Supreme Court had suggested that, in promulgating FOIA, Congress's intent "was to permit the numerous laws then extant allowing confidentiality to stand[.]" *Id.* at 266, 95 S.Ct. at 2148. Consequently, the Court found a portion of the Federal Aviation Act of 1958, 49 U.S.C. § 1504, which permitted nondisclosure when "a disclosure of such information would adversely affect the interests of such person and is not required in the interest of the public," to be a statute qualifying under Exemption 3. In modifying Exemption 3 to overrule such a result, Congress clearly indicated that its intent was to institute a sweeping change in the direction of thorough-going administrative disclosure.

Some statutes have, nevertheless, passed muster with Congress or the courts under the revised Exemption 3. Statutes suggested in the legislative history of that revision as qualifying under Exemption 3 include 42 U.S.C. §§ 2000e–5(b), 8(e) (1976),[2] 2 U.S.C. § 437g(a)(3) (1976),[3] and 49 U.S.C. § 1461 (1976).[4] The courts have added to this list § 6(b)(1) of the Consumer Product Safety Act, 15 U.S.C. § 2055(b)(1) (1976),[5] 50 U.S.C. §§ 403(d)(3) and 403g (1976),[6] and 13 U.S.C. §§ 8(b) and 9(a) (1976),[7] among oth-

ers. They have excluded statutes that, like the one at issue in *Robertson*, permit or discourage disclosure at the discretion of the administrator, limited only by the national or public interest. *See, e.g., American Jewish Congress v. Kreps*, 574 F.2d 624 (D.C.Cir.1978) (statute prohibiting publication of information "unless the [administrator] determines that the withholding thereof is contrary to the national interest" not within Exemption 3).

 It is clear from the first proviso of Exemption 3, 5 U.S.C. § 552(b)(3)(A), which deals with statutes leaving no discretion to the agency, that some administrative discretion will not remove a statute automatically from the purview of the second proviso. To hold otherwise would render that proviso meaningless. Nevertheless, the legislative history of the Act and its amendments, and subsequent judicial glosses, indicate that to fall within the second proviso of Exemption 3, a statute must set forth more than a standard placing the entire burden of decisionmaking on an administrative officer, checked only by amorphous reference to the public interest:

> Subsection (B) does leave room for administrative discretion in two carefully defined situations, but its unmistakable

**2.** *See* H.R.Rep.No. 880 (Part I), 94th Cong., 2d Sess. 23 (1976). Section 5(b) provides in pertinent part that "[c]harges [alleging unlawful employment practices] shall not be made public by the [Equal Employment Opportunity] Commission." Section 8(e) provides that

> It shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under this section prior to the institution of any proceeding under this subchapter involving such information.

**3.** *See* H.R.Rep.No. 880 (Part I), 94th Cong., 2d Sess. 23 (1976). The section then provided in subsection (B) that

> Any notification or investigation made under paragraph (2) [pertaining to alleged Federal Election Campaign Act violations] shall not be made public by the [Federal Election] Commission or by any person without the written consent of the person receiving such notification or the person with respect to whom such investigation is made.

**4.** *See* H.R.Rep.No. 880 (Part I), 94th Cong., 2d Sess. 23 (1976). The section provided, in part, that "all decisions [dealing with air carrier certificates or permits] by the [Civil Aeronautics] Board shall be submitted to the President before publication thereof." 49 U.S.C. § 1461(a) (1976).

**5.** *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). The section provides in pertinent part that

> The [Consumer Product Safety] Commission shall take reasonable steps to assure, prior to ... public disclosure [of information obtained or to be disclosed by it pursuant to this chapter], that information from which the identity of [the] manufacturer or private labeler may be readily ascertained is accurate, and that such disclosure is fair in the circumstances and reasonably related to effectuating the purposes of this chapte.

**6.** *See* cases cited in footnote 8 *infra.* Both sections are quoted at pages 703–704 *infra.*

**7.** *See Baldridge v. Shapiro*, —— U.S. ——, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982). Section 8(b) provides in part that, subject to particular limitations,

> the Secretary [of Commerce] may furnish copies of tabulations and other statistical materials which do not disclose the information reported by, or on behalf of, any particular respondent ....

Section 9(a) provides in part that

> [n]either the Secretary [of Commerce], nor any other officer or employee of the Department of ·Commerce or bureau or agency thereof, may, except as provided in section 8 of this title—

thrust ... is to assure that basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch.

*American Jewish Congress v. Kreps,* 574 F.2d 624, 628 (D.C.Cir.1978). *See also Irons & Sears v. Dann,* 606 F.2d 1215, 1219–20 (D.C.Cir.1979), cert. denied, 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980).

### III

In the instant case, the statutes claimed by the Government to fall within Exemption 3 are 22 U.S.C. § 2671 (1976) and 31 U.S.C. § 107 (1976). The former provides, in pertinent part, that

The Secretary of State is authorized to—

(a) make expenditures, from such amounts as may be specifically appropriated therefor, for unforeseen emergencies arising in the diplomatic and consular service and, to the extent authorized in appropriations Acts, funds expended for such purposes may be accounted for in accordance with section 107 of title 31 . . . .

31 U.S.C. § 107 provides that

Whenever any sum of money has been or shall be issued, from the Treasury, for the purposes of intercourse or treaty with foreign nations, in pursuance of any law, the President is authorized to cause the same to be duly settled annually with the General Accounting Office, by causing the same to be accounted for, specifically, if the expenditure may, in his judgment, be made public; and by making or causing the Secretary of State to make a certificate of the amount of such expenditure, as he may think it advisable not to specify; and every such certificate shall be deemed a sufficient voucher for the sum therein expressed to have been expended.

Thus, the sections together contemplate emergency foreign affairs expenditures for which the President or Secretary of State may account in secrecy. Appellee Department of State, here as in the District Court, asserts that these statutes, taken alone or in their historical and legislative context, pro-

vide standards of the specificity requisite to qualify for Exemption 3 status.

■ The Government points, as an indication of particular matters to be withheld, to the phrase in 22 U.S.C. § 2671, "emergencies arising in the diplomatic and consular service." Only such material, so it is said, as relates to these, and as relates to money specifically designated and appropriated by Congress, would qualify for FOIA exemption. As the District Court itself noted, however, this standard, to the extent that the phrase constitutes one, is simply too broad:

Every statute necessarily will refer, with more or less specificity, to 'particular types of matter.' ... To permit the fact that all payments were made from the Emergency Fund to be by itself a sufficient standard to satisfy the 'particular types of matter to be withheld' requirement would rob the standard of any meaning.

501 F.Supp. at 1155. In denying Exemption 3 status to § 7(c) of the Export Administration Act of 1969, 50 U.S.C.App. § 2406(c) (1970), for example, this court intimated that the referent of the statute's definition of "particular types of matter" was simply too vast for the statute to qualify, despite some designation of matters of particular types. *American Jewish Congress v. Kreps,* 574 F.2d 624, 630–31 (D.C. Cir.1978).

The statutes, as interpreted by the agency, are also, in the view of the District Court, too broad. 22 U.S.C. § 2671 might have met the Exemption 3 test were the expenditures incurred pursuant to it basically of one narrow type. But the Government's submission to the District Court indicates a vast array of matters falling within the "emergencies" rubric, ranging from Fine Arts Committee expenditures to travel expenditures for official delegations. 501 F.Supp. at 1158–59. This range does not become particular merely because Congress may have had some opportunity for overseeing it. The statute itself is, therefore, too broad to qualify for Exemption 3 withholding, even as construed by the Department.

(1) use the information furnished under the provisions of this title for any purpose other than the statistical purposes for which it is supplied; or

(2) make any publication whereby the data furnished by any particular establishment or

individual under this title can be identified; or

(3) permit anyone other than the sworn officers and employees of the Department or bureau or agency thereof to examine the individual reports.

Appellee further argues that the relationship between 22 U.S.C. § 2671 and 31 U.S.C. § 107, and other statutes, particularly 50 U.S.C. § 403(d)(3) (1976), suggests a contrary result. The legislative history of the amendment of Exemption 3 indicates that Congress contemplated continued Exemption 3 status for § 403(d)(3). H.R. Rep.No. 880 (Part II), 94th Cong., 2d Sess. 15 n.2 (1976). *Cf.* H.R.Rep.No. 1380, 93d Cong., 2d Sess. 12 (1974); S.Rep.No. 854, 93d Cong., 2d Sess. 16 (1974) (same result under earlier formulation of Exemption 3). Courts also have found that § 403(d)(3) and a related section, 50 U.S.C. § 403g (1976), fall within Exemption 3.[8]

These statutes, however, share little but common origins and general subject matter. 50 U.S.C. § 403g, which relates to the Central Intelligence Agency, provides that "the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency" shall be protected from disclosure. This specific designation of materials, combined with the section 403(d)(3) mandate "[t]hat the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure," provides a vastly more precise blueprint than do the two open-ended statutes relied upon in this case.

Appellee also contends that the privilege of secret accounting for expenditures provided the President and Secretary of State by 31 U.S.C. § 107 bespeaks an intent of Congress to allow those expenditures to be maintained in absolute secrecy, claiming that it would be foolish to account by certificate for expenditures subsequently disclosed under FOIA. This may be an appealing argument for FOIA exemption; it does not, however, establish the qualification of the statute under Exemption 3. Any properly classified material could, for example, have been withheld pursuant to the first exemption, set forth at 5 U.S.C. § 552(b)(1).

## IV

Upon concluding that the disputed material did not fall within the protection of Exemption 3—the only exemption claimed for it—the District Court went on to state that for the *Post*

> to prevail in this case, the Court would be required to find that the Freedom of Information Act was intended to repeal [the] long-exercised authority by Congress to maintain secrecy in the expenditure of funds affecting the nation's foreign relations, and, in particular, secrecy in expenditures from the Emergency Fund.

501 F.Supp. at 1157. This, the court would not find. For its conclusion that Congress had intended to allow no disclosure, it relied on this history as well as on the purported limited displacement of FOIA evidenced by certain more recent legislation. *See* Pub. L.No. 96–226, 94 Stat. 311 (1980); 501 F.Supp. at 1157 & n.7.[9]

It is uncontroverted that Congress has the power to maintain secrecy and, indeed, that it has frequently exercised it. The question before us, however, is whether, in the face of Congress's strong mandate of disclosure expressed in FOIA, we may conclude that it intended to exercise that power to prevent disclosure in this instance.

The Congressional debate following the *Robertson* decision indicates that it did not. In *Robertson*, the Supreme Court declined to interpret FOIA as though it had (1) repealed "by implication all existing statutes 'which restrict public access to specific Government records,'" 422 U.S. at 265, 95 S.Ct. at 2147, quoting H.R.Rep.No. 1497, 89th Cong., 2d Sess. 10 (1966), U.S.Code

---

**8.** *See Halperin v. CIA*, 629 F.2d 144 (D.C.Cir. 1980); *Goland v. CIA*, 607 F.2d 339 (D.C.Cir. 1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *Ray v. Turner*, 587 F.2d 1187 (D.C.Cir.1978); *Baker v. CIA*, 580 F.2d 664 (D.C.Cir.1978); *Weissman v. CIA*, 565 F.2d 692 (D.C.Cir.1977); *Phillippi v. CIA*, 546 F.2d 1009 (D.C.Cir.1976). *See also* Note, *The Effect of the 1976 Amendment to Exemption Three of the Freedom of Information Act*, 76 Colum.L.Rev. 1029, 1044 n.91 (1976) (discussing § 403g). *Cf.* J. T. O'Reilly, Federal Information Disclosure ¶ 13.07 (1977) (implying exemption under § 552(b)(3)(A)).

**9.** This conclusion was presaged in part by the District Court's comment to appellant's counsel, at the hearing on the cross-motions for summary judgment, that

> You are in a traditional historical area where no one would contemplate such disclosure except the Washington Post.... [Y]ou are asking for a broad opening-up of the entire traditional history of confidentiality, going to the heart of the President's conduct of key aspects of foreign affairs.

Transcript at 20–21.

Cong. & Admin.News 1966, p. 2418, and (2) intended to reassess "every delegation of authority to withhold information which it had made before the passage of this legislation . . . ." *Id.* The Court, instead, asserted its purpose to interpret FOIA, to the extent possible, consistently with such previous legislation.

■■■. The subsequent—and professedly responsive—action by Congress to amend Exemption 3 to "eliminate the gap created in the Freedom of Information Act by the *Robertson* case," H.R.Rep.No. 880 (Part I), 94th Cong., 2d Sess. 23 (1976), U.S.Code Cong. & Admin.News 1976, p. 2205, emphatically demonstrated Congress's intent that FOIA must be taken to be something more than an ordinary statute, namely, the definitive word on disclosure of the information in the Government's possession covered by it. *See* S.Rep.No. 813, 89th Cong., 1st Sess. 3 (1965). Other legislation, its history, and powers of Congress underlying it are not to be ignored, but are to be taken as justifying refusal to disclose only when they meet the strictures of one of the specific exemptions included in FOIA. Consequently, when the District Court went beyond its determination that the material did not fall within the relevant FOIA exemption, and asked whether Congress had the power to prevent disclosure and had in fact exercised such power in the past, it asked a question an affirmative answer to which could not foreclose appellant's right to disclosure.

■ In so holding, we are not to be understood as implying that there is no FOIA exemption that could conceivably encompass the disputed material. Rather, we assert only, as did the District Court, that Exemption 3—the only FOIA exemption claimed by the Department of State in this court—does not apply to this material; and that, in the absence of any other applicable exemption, the courts lack the power to bar disclosure permanently. On remand, the District Court may consider the applicability of any other FOIA exemptions, whether raised by the Department of State or by the court itself, *sua sponte.*[10]

It is possible for a reviewing court to have substantial reservations about the wisdom of public disclosure of various kinds of materials which Congress has, wittingly or unwittingly, in terms brought within the broad reach of FOIA. It is not unlikely that there are circumstances in which, if Congressional attention were to be focussed directly upon a disclosure mandated by FOIA, it would elect to narrow the scope of that statute, just as its focus upon the disclosure denied by the Supreme Court in *Robertson* caused it explicitly to broaden the Act. But, until Congress acts in response to such a stimulus, there is no dispensing power presently vested in the courts to repair what arguably may have been an oversight. That can only be done by Congress itself. The most that a court could do in such a situation would be, in response to a strong showing of imminent and demonstrable danger to a compelling national interest, to stay its judgment for a time to give Congress an opportunity to correct its oversight, if such it be.[11] *See, e.g.,* the judgment order of this court in *American Banks Association and Tioga State Bank v. Connell,* (D.C.Cir.1979).

---

For the foregoing reasons, we (1) reverse the grant of summary judgment by the District Court to appellee Department of State, and (2) affirm the denial of appellant *Post*'s motion for summary judgment, with-

The second part of the District Court's conclusion, relying upon recent Congressional action, is not unlike its reasoning in another FOIA case, *Zale Corp. v. United States Internal Revenue Service*, 481 F.Supp. 486 (D.D.C.1979). *Zale* suggests as well that Congressional action, and particularly post-FOIA legislation, may override FOIA, at least in limited circumstances. While we intimate no opinion on the *Zale* holding, we note that in that case, as in a similar case, *Anheuser-Busch, Inc. v. Internal Revenue Service*, 493 F.Supp. 549 (D.D.C. 1980), the District Court specifically held that Exemption 3 would, in any event, have prevented disclosure of the disputed material. In the instant case, the holding of the District Court was expressly to the contrary.

**10.** Cases in which courts have suggested or raised the applicability of FOIA exemptions *sua sponte* include *Greentree v. United States Customs Service,* 515 F.Supp. 1145 (D.D.C.1981), *reversed and remanded for consideration of other FOIA exemptions,* 674 F.2d 74 (D.C.Cir. 1982); *Sims v. CIA,* 479 F.Supp. 84, 88 (D.D.C. 1979), *vacated and remanded on other grounds,* 642 F.2d 562 (D.C.Cir.1980); *Dunaway v. Webster,* 519 F.Supp. 1059, 1071–73 (N.D.Cal.1981).

**11.** The appropriate standard for evaluating claims of danger to the national interest is suggested by analogy to dicta in first amendment cases dealing with prior restraints on publication:

out prejudice to a second motion by the *Post* should the Government be unable to establish the applicability of any other exemptions.

Our remand of this case to the District Court shall, however, be without prejudice to an application by the Department of State, if it should so choose, to the District Court for a stay of the judgment mandated by this opinion, for the purpose and upon the showing hereinabove indicated. Any such stay shall be entered only after such proceedings as the District Court may determine to be necessary for the exploration of the dangers to the national interest asserted by the Department of State, and upon appropriate findings by the District Court. Such a stay should be of fixed duration and only for such period of time as may be reasonably required for the exhaustion of its purpose.

*It is so ordered.*

FRIEDMAN, Chief Judge, concurring:

This is a difficult and perplexing case which requires the reconciliation of two lines of conflicting congressional directives.

1. On the one hand, two sets of statutes counsel secrecy. First, there are the statutes authorizing the Secretary to account for these expenditures by merely certifying their amount without disclosing their nature. 22 U.S.C. § 2671(a) (1976); 31 U.S.C. § 107 (1976). The procedure of accounting for expenditures relating to foreign affairs secretly through certificates is almost as old as the Constitution. In the Act of Feb. 9, 1793, ch. IV, § 2, 1 Stat. 299, 300, Congress empowered the President to account for all money spent "for the purposes of intercourse or treaty, with foreign nations," either specifically or by certificates, "as he may think it advisable." This section was codified in the Revised Statutes of 1878. R.S. § 291.

The present version gives the President the same choice in accounting for all expenditures "for the purposes of intercourse or treaty with foreign nations ... as he may think it advisable." 31 U.S.C. § 107. In 1979, $2,350,000 was appropriated "to

No one would question but that [when a nation is at war] a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops.

enable the Secretary of State to meet unforeseen emergencies arising in the Diplomatic and Consular Service," to be accounted for under section 107. Act of Sept. 24, 1979, Pub.L.No. 96–68, title I, 93 Stat. 416, 417.

Second, in 1980, Congress passed the General Accounting Office Act of 1980, Pub. L.No. 96–226, 94 Stat. 311. Section 101 authorizes the General Accounting Office to audit an expenditure accounted for solely by certificate "to determine whether the expenditure was, in fact, actually made and whether such expenditure was authorized by law." 31 U.S.C. § 67(f)(1) (Supp. IV 1980).

While the Act imposes some control and oversight on those expenditures, their confidentiality is maintained. The results of such audits may be released only to the President and the head of the agency involved and, solely in cases of discrepancies, to the Senate Committee on Government Affairs, the House Committee on Government Operations, and the Senate and House committees having legislative and appropriations authority over the particular agency. *Id.* § 67(f)(2).

Further, the President may exempt from audit expenditures "which relate to sensitive foreign intelligence or foreign counterintelligence activities, or sensitive law enforcement investigations." *Id.* § 67(f)(3)(B).

Section 102 of the Act gives the Comptroller General subpoena powers to conduct the audits. He cannot, however, issue or enforce a subpoena for (1) materials relating to foreign intelligence or foreign counterintelligence activities; (2) materials that, by statute, cannot be disclosed to him, under the same standards as exemption 3 of the Freedom of Information Act provides; or (3) materials that exemptions 5 and 7 of the Freedom of Information Act, 5 U.S.C. §§ 552(b)(5), 552(b)(7) (1976), cover, the disclosure of which could impair substantially governmental operations. 31 U.S.C. § 54(d) (Supp. IV 1980). All information he receives is subject to the same level of confidentiality as it had in the originating agency. *Id.* § 54(e).

*Near v. Minnesota,* 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931). *See Halperin v. Department of State,* 565 F.2d 699, 706–07 (D.C.Cir.1977) (suggesting possible application of prior restraint standard to "extraordinary" circumstances raised by FOIA litigation).

The congressional concern in the Act was to maintain the secrecy of these records and materials while at the same time making the agencies accountable for their secret expenditures. S.Rep.No. 570, 96th Cong., 2d Sess. 3–8, *reprinted in* 1980 U.S.Code Cong. & Ad.News 732, 734–39. Congress intended the certificates to remain secret; it limited distribution even to itself. As the district court said, it does not make sense to release, under the Freedom of Information Act, materials that Congress itself does not see. *Washington Post Co. v. Department of State*, 501 F.Supp. 1152, 1157 (D.D.C.1980).

2. On the other hand, as the court notes, the Freedom of Information Act, 5 U.S.C. § 552 (1976 & Supp. IV 1980), imposes broad requirements of disclosure subject to detailed and carefully delineated exemptions. The courts have recognized that the nine exemptions in the Freedom of Information Act are the exclusive exceptions to the general rule of disclosure. *E.g., Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976); *Jordan v. Department of Justice*, 192 U.S.App.D.C. 144, 147, 591 F.2d 753, 756 (1978). The Department of State has relied solely on exemption 3. It claims that 22 U.S.C. § 2671(a) and 31 U.S.C. § 107 together justify nondisclosure of material relating to the Emergency Fund.

The court convincingly shows that exemption 3 cannot be used to protect confidentiality of this material. In that exemption Congress imposed exacting requirements governing the kind of confidentiality statutes that would justify nondisclosure. As the court demonstrates, although the two statutes upon which the State Department relies reflect congressional intent to maintain confidentiality of the Emergency Fund, they do not meet the strict standards Congress imposed in exemption 3.

3. The statutes I have referred to in part 1 leave no doubt in my mind that if Congress ever had considered whether to permit disclosure under the Freedom of Information Act of material relating to the Emergency Fund, it would not have permitted such disclosure. In the Freedom of Information Act, however, Congress did not address the question. I agree with the court that there is no basis upon which we can ignore or seriously distort the language and standards of exemption 3 to reach a result that we think Congress would have favored if it had considered the problem.

4. On the record before us we cannot tell or even guess the true nature of the material the plaintiff seeks or the effect, if any, its disclosure would have upon the foreign relations of the United States. I therefore fully agree with the court's action in giving the government and the district court the opportunity on remand to invoke or consider other exemptions in the Freedom of Information Act as a basis for maintaining the confidentiality of this material. If all or some of this material has been classified, exemption 1 might cover it. The government might be able to invoke the privilege covering state secrets, *see United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953), and if it did, exemption 5 might apply. Other exemptions also might be available. Furthermore, this may be a situation where only some but not all of the material might be protected against disclosure. These are issues the district court may consider on the remand. I understand the court's opinion as giving the district court broad discretion in handling the matter. Finally, under our decision Congress will have the opportunity to take legislative action to maintain the confidentiality of the Emergency Fund if it deems that course appropriate.

The steps that the court has taken to provide further opportunity to protect the Emergency Fund material against disclosure seem to me to be as far as it properly may go. I do not see how, however, consistent with the Freedom of Information Act, the court on the present record could hold that exemption 3 covers this material or that there is some other basis for protecting it against disclosure.

## ON DENIAL OF REHEARING EN BANC

Before ROBINSON, Chief Judge, and WRIGHT, TAMM, MacKINNON, WILKEY, WALD, MIKVA, EDWARDS, GINSBURG, BORK and SCALIA, Circuit Judges.

### ORDER

PER CURIAM.

Appellees' suggestion for rehearing *en banc* has been circulated to the full Court. A majority of the Court has not voted in favor of the suggestion. On consideration of the foregoing, it is

ORDERED by the Court *en banc* that the aforesaid suggestion is denied.

A statement on the denial of rehearing *en banc,* filed by Circuit Judge SCALIA, in which Circuit Judges MacKINNON and BORK concur, is attached.

SCALIA, Circuit Judge:

We believe this case should be reheard *en banc,* not merely because the effect of the panel decision is to overturn a congressionally approved tradition and practice of confidentiality in foreign affairs matters that is almost two centuries old. It is conceivable that Congress produced that surprising result, either intentionally or inadvertently, in the 1976 Amendments to the Freedom of Information Act (FOIA), Pub.L. No. 94–409, 90 Stat. 1247 (1976). Rather, the source of our concern is that in arriving at that surprising result the panel decision embraced a process of statutory interpretation that makes nonsense of legislation enacted *after* the 1976 Amendments. Thus, we find that we now have on the books a statute, enacted in 1980, which places the most detailed limitations upon access by the Comptroller General, by employees of the Executive branch, and even by Members of Congress themselves, to a category of material which (according to the panel decision) any member of the public may obtain at will.* 31 U.S.C. § 67(f) (Supp. IV 1980).

Such a perverse result is contrary to the common-sense prescription, elevated to a rule of statutory construction, that "[s]tatutes in pari materia, although in apparent conflict, are so far as reasonably possible construed to be in harmony with each other." 2A Sutherland, *Statutory Construction* (C. Sands 4th ed. 1973) § 51.02 at 290. The 1976 Amendments to FOIA may reasonably be said to have rendered that rule inapplicable insofar as *previously* enacted statutes are concerned, since the avowed purpose of those Amendments was to eliminate some of the secrecy which earlier statutes preserved. *See* H.R.Rep. No. 880 (Part I), 94th Cong., 2d Sess. 23 (1976); H.R.Rep. No. 1441, 94th Cong., 2d Sess. 25 (1976) (Conference Report), U.S.Code Cong. & Admin. News 1976, p. 2183. It is quite another matter, however, to elevate FOIA to what other courts have disapprovingly called "a

prospective pre-emption" of *future* legislation. *King v. IRS,* 688 F.2d 488, 495 (7th Cir.1982), quoting from *Zale Corp. v. IRS,* 481 F.Supp. 486, 489 (D.D.C.1979). Such an approach to legislative construction lays traps for the unwary, in Congress and the Executive branch as well as among the general public, and impedes the development of a coherent body of law in this field.

We believe that the application of Exemption 3 to confidential expenditures cannot properly be assessed on the basis of its legislative history alone, and without regard to related subsequent enactments. The opinion of the panel barely mentions the 1980 statute; the concurring opinion acknowledges that its coexistence with the panel's disposition "does not make sense," *supra* p. 707, but apparently regards that as an issue separate and apart from the proper interpretation of Exemption 3. In our view, the later enactment was a factor that demanded attention—not as an isolated phenomenon whose incompatibility with the court's interpretation of Exemption 3 could be marvelled at, but as an essential element of the interpretive process itself. The 1980 legislation does not, to be sure, specifically deal with disclosure to the public, but its assumptions and implications with regard to such disclosure could not be clearer. And in another respect it is more specifically directed to the present question than the 1976 legislative history, since it addresses disclosure of confidential expenditures in particular, rather than disclosure of government information in general.

The language of Exemption 3 would certainly bear the interpretation that the Government urged. As the panel opinion indicates, the dispute comes down to whether the criterion "unforeseen emergencies arising in the diplomatic and consular service," 22 U.S.C. § 2671 (1976), is particular enough to qualify as a "particular criteri[on] for withholding" within the meaning of Exemption 3. We hardly thing that the language of the 1976 statute and its legislative history provide such a clear answer to that abstruse question that the later legislation cannot be accommodated, as traditional canons of interpretation

---

* The panel's assurance that it is "not to be understood as implying that there is no FOIA exemption that could conceivably encompass the disputed material," slip op. at 14, is a hollow one, insofar as it is meant to apply to the full range of material here in question. Other exemptions, such as the exemption for classi-

fied material, 5 U.S.C. § 552(b)(1), may apply to particular items, but only Exemption 3 can conceivably cover the entire category of material that the 1980 statute so scrupulously withholds from all government officials except a designated few.

would demand. That is the course we would follow, making it unnecessary to remand the case in the hope that the district court might devise some way to undo the harm produced.

We have thought it worthwhile to express these views not only because the specific result in the present case may be harmful to the national interest, but because the theory of "prospective pre-emption" which the panel decision represents is sure to confuse the application of future laws and to swell unnecessarily the list of FOIA filings.